**GREENBERG TRAURIG, LLP**
HOWARD J. STEINBERG (SBN 89291)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel: 310-586-7700
Fax: 310-586-7800
Email: steinbergh@gtlaw.com

Attorneys for
The Bird's Nest, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>DANA HOLLISTER<br><br>　　　　　　　Debtor, | Bk. No. 2:18-bk-12429-NB<br><br>Chapter 11<br><br>**OPPOSITION OF THE BIRD'S NEST, LLC TO EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS AFTER FINAL HEARING; DECLARATION OF ERIC ROWEN; REQUEST TO TAKE JUDICIAL NOTICE OF BANKRUPTCY SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS**<br><br>Hearing Date: March 9, 2018<br>Time:　　　1:00 p.m.<br>Place:　　　Courtroom 1545<br>　　　　　　255 E. Temple Street<br>　　　　　　Los Angeles, CA  90012 |

1

LA 133555088v1

# TABLE OF CONTENTS

PAGE

I. INTRODUCTION ........................................................................................................... 1

II. THE MOTION SHOULD BE DENIED........................................................................... 2

    A. Ms. Hollister's Business Projections Demonstrate That Continued Operation of the "Business" Will Generate Substantial Losses and Diminution of the Alleged Equity Cushion .... 2

    B. Ms. Hollister Admits that TBN Has a Lien on Her Assets...................................... 4

    C. Adequate Protection is Not Provided to TBN.......................................................... 4

        1. Adequate Protection Must be Provided. ...................................................... 4

        2. Ms. Hollister Has Not Met Her Burden of Proof......................................... 7

        3. Granting the Motion Would Violate the Underlying Policies of Chapter 11 ....... 10

III. CONCLUSION.............................................................................................................. 10

LA 133555088v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 1606 New Hampshire Ave. Associates,*
   85 B.R. 298 (E.D. Pa. 1988) .................................................................................................. 8

*Addington v. Texas,*
   441 U.S. 418. 423, 99 S. Ct. 1804, 60 L Ed. 2d 323 (1979) .................................................. 8

*In re American Mariner Industries,*
   734 F.2d 426, rev'd and remanded on other grounds, 734 F.2d 426 (9th Cir. 1984) .......... 7

*In re Anthem Communities/RBG, LLC,*
   267 B.R. 867 (Bankr. D. Colo. 2001) ..................................................................................... 9

*Bank of America National True and Sav. Ass'n v. 203 N. LaSalle Street, Partnership,*
   526 U.S. 434, 119 S.Ct. 1411 (1999) .................................................................................... 10

*Bankwest N A. v. Todd,*
   49 B.R. 633 (D.S.D. 1985) ...................................................................................................... 9

*In re Berens,*
   41 B.R. 524 (Bankr. D. Minn. 1984) ...................................................................................... 8

*In re Century Investment Fund VIII L.P.,*
   155 B.R. 1002 (Bankr. E.D. Wis. 1989), aff'd, 937 F.2d 371 (7th Cir. 1991) ....................... 7

*In re Certified Corp.,*
   51 B.R. 768 (Bankr. D. Hawaii 1985) .................................................................................... 7

*In re Compton Impressions, Ltd.,*
   217 F.3d 1256 (9th Cir. 2000) ............................................................................................... 10

*In re George Ruggiere Chrysler-Plymouth, Inc.,*
   727 F. 2d 1017 (11th Cir. 1984) ............................................................................................. 6

*Herman & Maclean v. Huddleston,*
   459 U.S. 375, 103 S. Ct. 683, 74 L Ed. 2d 548 (1983) .......................................................... 8

*In re Leavell,*
   56 B.R. 11 (Bankr. S.D. Ill. 1985) .......................................................................................... 6

*In re Llewellyn,*
   27 B.R. 481 (W.D. Pa. 1983) .................................................................................................. 9

*In re Martin,*
   761 F.2d 472 (8th Cir. 1985) .................................................................................................. 5

LA 133555088v1

*In re Metromedia Fiber Network, Inc.*,
   290 B.R. 487 (Bankr. S.D.N.Y. 2003) ............................................................................ 6

*In re Mickler*,
   9 B.R. 121 (Bankr. M.D. Fla. 1981) ................................................................................ 8

*Matter of Milleson*,
   83 B.R. 696 (Bankr. D. Neb.1988) ................................................................................. 6

*In re Philadelphia Consumer Discount Co.*,
   37 B.R. 946 ..................................................................................................................... 7

*In re Polzin*,
   49 B.R. 370 (Bankr. D. Minn. 1985) .............................................................................. 9

*In re Robert E. Derecktor, Inc.*,
   137 B.R. 95 (Bankr. D. RI 1992) .................................................................................... 9

*In re Rolland*,
   317 B.R. 402 (Bankr. C.D. Cal. 2004) ........................................................................... 4

*Security Leasing Partners, L,P. v, ProAlert, LLC (In re ProAlert, LLC)*,
   314 B.R. 436 (B.A.P. 9th Cir, 2004) ............................................................................. 10

*In re Southerton Corp.*,
   46 B.R. 391 (M.D. Pa. 1982) .......................................................................................... 6

*In re Stacy Farms*,
   78 B.R. 494 (Bankr. S.D. Ohio 1987) ............................................................................ 8

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*,
   484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) ................................................. 6

*United States v. Security Industrial Bank*,
   459 U.S. 70, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982) ................................................... 6

*In re Weinstein*,
   227 B.R. 284 (B. A. P. 9th Cir. 1998) ............................................................................ 7

**Statutes**

11 U.S.C. § 361(3) ................................................................................................................. 5

11 U.S.C. §§ 361 and 363 .................................................................................................... 10

11 U.S.C. §§ 361 and 363(e) ................................................................................................. 4

11 U.S.C.§ 363(a) .................................................................................................................. 4

11 U.S.C. § 363(c)(2)(B) ....................................................................................................... 5

11 U.S.C. § 363(e) ..................................................................................................... 5

11 U.S.C. § 363(p) ..................................................................................................... 7

11 U.S.C. § 506(c), (d) .............................................................................................. 4

11 U.S.C. §§ 523(a)(6) .............................................................................................. 1

11 U.S.C. § 547 (b)(3) .............................................................................................. 4

California Code of Civil Procedure §§ 697.340 and 708.110(d) .............................. 4

Code §363 ......................................................................................................... 5, 6, 8

**Other Authorities**

Fifth Amendment ............................................................................................. 6, 7, 8

Bankruptcy Rule 9017 ............................................................................................... 4

Federal Rule Evidence 201 ........................................................................................ 4

Senate Report No. 95-989, U.S. Code Cong. & Admin. News 5787 (1978) ............ 6

## I. INTRODUCTION

In the Emergency Motion for Order Authorizing Use of Cash Collateral on an Interim Basis and Final Basis after Final Hearing (the "Motion"), the Debtor, Dana Hollister, describes herself as "very successful", a "visionary", a "innovator", and an "entrepreneur." (Motion, p. 4) Those words stand in stark contrast to the illicit conduct and behavior engaged by Ms. Hollister that led her to file this bankruptcy case. In an improper attempt to wrest control of a property that The Bird's Nest, LLC ("TBN") contracted to purchase, Ms. Hollister engaged in a series of wrongful acts that culminated in a California state court jury (the "State Court Action") finding her liable for tortious interference with contractual relations, interference with economic relations, and slander of title, with express findings that she acted with oppression, fraud, and/or malice. Judgment was entered against Ms. Hollister for actual and punitive damages of nearly $16 million (the "Judgment"). Should it prove necessary, the details of her wrongful acts will be set forth. The Judgment is nondischargeable. 11 U.S.C. §§ 523(a)(6); 1141(d)(2).

During the punitive damages stage of the State Court Action, which took place in December 2017, Ms. Hollister was required to provide testimony concerning the value of her assets and to produce documents relating to her financial condition and she submitted a financial statement dated as of November 15, 2017. At that time, it was in her financial interest to have a lower net worth since the jury was required to consider her finances when assessing punitive damages. The difference between the values she ascribed to assets in that proceeding and what she now ascribes just 3 months later to these very same assets, as set forth in the Bankruptcy Schedules, is staggering.

Tellingly, she is incentivized to provide a higher valuation of assets in these proceedings to, among other things, point to an alleged equity cushion as a basis for frustrating efforts by creditors to foreclose on her assets and so that she may access cash collateral and continue her grandiose lifestyle unabated. By way of example, during the State Court Action she ascribed a value to her primary asset, "The Paramour", located at 1923 Micheltorena Street, Los Angeles,

1

OPPOSITION TO MOTION FOR USE OF CASH COLLATERAL

LA 133555088v1

California, of $19 million; she now says that 3 months later, it is worth $36 to 40 million. (Motion, p. 4). She confirmed the $19 million valuation in her court testimony in December 2017. Declaration of Eric Rowen ("Rowen Decl."), ¶ 4, Exhibit "B". She ascribed a value of $1.622 million to the 1910 Micheltorena Street property, yet now values it at $2.4 million. She valued her interest in Cliff's LLC at $210,000 yet now values it at $1 million. Rowen Decl., ¶ 4, Exhibit "A". It also appears that Ms. Hollister engaged in some highly questionable transactions and transfers prior to her bankruptcy filing. By way of example, she set forth on her November 2017 balance sheet a property at 1902 Micheltorena Street with a value of $2 million and a net value of $631,748. That property was allegedly sold yet Ms. Hollister has failed to account for the sales proceeds. Rowen Decl., ¶6.

The propriety of this bankruptcy filing and the issue of whether this case should be converted or dismissed are matters to be addressed in due course. In the interim, this Motion should be denied. It is nothing short of an attempt by Ms. Hollister to continue to fund her lavish lifestyle at the expense of her creditors. There is no business justification for expending cash collateral in the amounts requested, as Ms. Hollister's projections demonstrate that the "business" will continue to lose money, and these projections do not provide for payment of significant secured claims that will erode the alleged equity cushion in the underlying assets. This said, subject to interests being adequately protected, TBN does not oppose a limited use of cash collateral to fund expenses essential to maintain properties if they are put up for sale.

## II. THE MOTION SHOULD BE DENIED

### A. Ms. Hollister's Business Projections Demonstrate That Continued Operation of the "Business" Will Generate Substantial Losses and Diminution of the Alleged Equity Cushion

In Schedule I, Ms. Hollister says she has no gross wages or salary, but states that she receives other income of $8,000 per month. In her declaration in support of the Motion ("Hollister Decl."), she says the Paramour generates approximately $1-1.5 million in annual

2

OPPOSITION TO MOTION FOR USE OF CASH COLLATERAL

LA 133555088v1

revenues and that projected revenue for 2018 is similar to the revenue in 2016 ($1.22 million) and 2016 ($1.35 million). Hollister Decl., ¶ 6, 23) No facts are set forth establishing why it would be reasonable to assume that financial performance in 2018 will replicate 2017.

Even assuming that revenues are $1.3 million for 2018, that equates to monthly income of $108,333. The 6 month Cash Flow Projections that are attached to the Motion (Motion, p. 18), show that monthly payments to service 2 of the mortgages on the Paramour total $111,998. Property insurance for a portion of the year is $75,000, and the various monthly utility and related property expenses appear to be in excess of $8,400. There is no line item for the payment of property taxes, nor is there a line item should repairs be necessary at the property. Conservatively, the "business" operates at a loss of at least $30,000 per month assuming the Cash Flow Projections are correct and there is no need for repairs.

Schedule D, which is attached to the Motion, sets forth the creditors who hold liens on the Paramour. The lienholders who are scheduled to receive payments in the Cash Flow Projections are Springs 7 Loft, LLC (allegedly owed $8 million) and Select Portfolio Servicing, Inc. (allegedly owed $4,392,437). In addition, DeeAnna Staats ("Staats") is said to be owed $950,000; the Roman Catholic Archbishop of Los Angeles ("RCA") is said to be owed $10,146,842; and TBN is said to be owed $5,244,294. Thus, by Ms. Hollister's own admission, there are liens against the Paramour totaling over $16.3 million that are accruing interest yet not being provided for under the cash collateral budget. Interest is accruing on the RCA and TBN claims at the rate of 10% per annum, and the debt exceeds $15.3 million. This interest accrual is over $128,000 per month. Assuming even a nominal interest rate for the Staats debt results in a negative monthly cash flow arising from the continued ownership of the Paramour of over $160,000 per month.

Ms. Hollister contends that encumbrances against the Paramour total less than $15 million. (Motion, p. 11) This is incorrect. Assuming the Schedules are correct, the liens total nearly $29 million. Ms. Hollister is dismissive of the RCA and TBN liens in the Motion, and

3

OPPOSITION TO MOTION FOR USE OF CASH COLLATERAL

LA 133555088v1

says they should be disregarded because the liens were perfected within 90 days of her bankruptcy filing. (Motion, p. 11, n. 5) She fails to take into account that in her Schedules, she states that she is solvent and has assets of over $49 million and debts of under $41.1 million. The statements in the Schedules are judicial admissions. *In re Rolland*, 317 B.R. 402, 421-22 (Bankr. C.D. Cal. 2004). The Court is requested to take judicial notice of the Schedules and Statement of Financial Affairs filed by Ms. Hollister. Federal Rule Evidence 201, made applicable by Bankruptcy Rule 9017. Absent proof of insolvency at the time RCA and TBN recorded their judgment liens, these liens are not avoidable as a preference. 11 U.S.C. § 547(b)(3). Ms. Hollister cannot allege that she was insolvent given the admission in her Schedules.

### B. Ms. Hollister Admits that TBN Has a Lien on Her Assets

In Section D of her Schedules, Ms. Hollister admits that TBN recorded an abstract of judgment and has a lien on real property and that a lien in favor of TBN on personal property arose as a consequence of a judgment debtor examination. See California Code of Civil Procedure §§ 697.340 and 708.110(d). She further admits that for purposes of the Motion, 100% of gross receipts are cash collateral. Motion, p. 6. The abstract and judgment debtor examination application are attached to Rowen Decl. as Exhibits "C" and "D".

### C. Adequate Protection is Not Provided to TBN

#### 1. Adequate Protection Must be Provided.

Pursuant to 11 U.S.C. §§ 361 and 363(e), TBN seeks adequate protection of its interests as a condition to any use of cash collateral (as such term is defined in 11 U.S.C. § 363(a)) on terms that are acceptable to TBN and which are approved by the Court. This includes (a) replacement of its lien with a "blanket" lien on Ms. Hollister's assets to the same extent of its lien on Ms. Hollister's assets, (b) a requirement that secured creditor approval be obtained before expenditures in excess of 10% of the monthly amounts set forth in the Cash Flow Projections are made, (c) an acknowledgement that no amounts expended by any party may be surcharged against the collateral under 11 U.S.C. § 506(c), (d) that no professional fees be paid out of the

Case 2:18-bk-12429-NB    Doc 14    Filed 03/08/18    Entered 03/08/18 13:57:20    Desc
Main Document    Page 10 of 19

collateral until TBN's liens have been paid in full; and (e) that the Paramour be put up for sale forthwith.

TBN is entitled to adequate protection. Pursuant to 11 U.S.C. § 363(e), at any time, on request of an entity that has an interest in property used, sold or leased or proposed to be used, sold or leased by the debtor, "the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Pursuant to § 363(c)(2), a debtor may not use, sell or lease cash collateral unless each entity that has an interest in such cash collateral consents, or the Court, after notice and a hearing, authorizes such use, sale or lease. Because cash collateral, once spent, is impossible to recover, the Bankruptcy Code strictly conditions a debtor's use of cash collateral upon the secured creditor receiving adequate protection of its interest in such collateral. 11 U.S.C. § 363(c)(2)(B).

The Bankruptcy Code does not define the term "adequate protection," but § 361 lists examples of how adequate protection may be provided:  (a) requiring the debtor to make a cash payment or periodic cash payments to such entity, to the extent that the stay under § 362, the use, sale or lease under § 363, or the grant of a lien under § 364 results in a decrease in the value of such entity's interest in such property; (b) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or (c) granting such other relief, other than entitling such entity to compensation allowable under § 503(b)(1) as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property. While "adequate protection" may be a flexible concept, this flexibility cannot operate to the detriment of the secured creditor. E.g., *In re Martin*, 761 F.2d 472, 477 (8th Cir. 1985). Regardless of the form that adequate protection takes, the secured creditor is entitled to receive the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3); see

5
OPPOSITION TO MOTION FOR USE OF CASH COLLATERAL
LA 133555088v1

*In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) (adequate protection is mandatory); *In re Leavell*, 56 B.R. 11, 13 (Bankr. S.D. Ill. 1985) (same).

Further, § 507(b) provides that if adequate protection is afforded to the holder of a claim secured by a lien on property of the debtor, and if, notwithstanding such protection, such creditor has a claim allowable under § 507(a)(l) arising from the use, sale, or lease of such property under § 363, then such creditor's claim is entitled to priority over every other claim allowable under such subsection.

Ensuring adequate protection of TBN's interests before Ms. Hollister uses, consumes, sells or otherwise disposes of any of the collateral is critical. Though a creature of the Bankruptcy Code, the concept of "adequate protection" is rooted in the Fifth Amendment's prohibition against the taking of private property without just compensation. See Notes of Committee on the Judiciary, Senate Report No. 95-989, U.S. Code Cong. & Admin. News 5787 (1978); *Matter of Milleson*, 83 B.R. 696, 700 (Bankr. D. Neb.1988); *In re Southerton Corp.*, 46 B.R. 391, 397-98 (M.D. Pa. 1982). As the Supreme Court stated in *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S. Ct. 407, 74 L. Ed. 2d 235 (1982), "[t]he bankruptcy power is subject to the Fifth Amendment's prohibition against taking private property without compensation." 459 U.S. at 75, 103 S. Ct. at 410, 74 L. Ed. 2d 235. Liens unquestionably are "property rights" protected by the Fifth Amendment. E.g., *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F. 2d 1017, 1019 (11th Cir. 1984). Ms. Hollister's own projections show a deterioration of the "business" over the projected period.

To satisfy the Fifth Amendment and the "indubitable equivalence" standard of § 361(e), adequate protection must compensate the secured creditor for any decrease in the value of its collateral as a result of the use, deterioration, depreciation, destruction or any other caused reduction in value during the bankruptcy case. E.g., *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (adequate protection is essentially the amount of the collateral's decrease in value from

the petition date); *In re American Mariner Industries*, 734 F.2d 426, 433, rev'd and remanded on other grounds, 734 F.2d 426, 435 (9th Cir. 1984) (required adequate protection must compensate the secured creditor for the present value of the collateral and ensure the safety of the principal); *In re Weinstein*, 227 B.R. 284, 296 (B. A. P. 9th Cir. 1998) ("Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process").

A secured creditor lacks adequate protection for its security interests if there is a threat of decline in the value of the collateral. This will result as a consequence of the erosion of the alleged equity cushion on account of interest accruing on other secured creditor claims that are not being paid under the Cash Flow Projections. See *In re Certified Corp.*, 51 B.R. 768, 771 (Bankr. D. Hawaii 1985) (the protection to be afforded to secured creditor to permit debtor's use of cash collateral must result in the indubitable equivalent of the secured creditor's interest in the property). Ms. Hollister's strategy of using TBN's cash collateral as her own personal piggy bank violates TBN's rights as a secured creditor.

## 2. Ms. Hollister Has Not Met Her Burden of Proof.

Ms. Hollister bears the burden of establishing that TBN's interests in the collateral will be adequately protected. 11 U.S.C. § 363(p) (debtor has burden of proof on "issue of adequate protection"); *In re Century Investment Fund VIII L.P.*, 155 B.R. 1002 (Bankr. E.D. Wis. 1989), aff'd, 937 F.2d 371 (7th Cir. 1991); *In re Philadelphia Consumer Discount Co.*, 37 B.R. 946. 949 (E.D. Pa. 1984) (debtor had the burden to show that its proposed use of collateral would adequately protect the creditor's interest in collateral).

To sustain this burden, Ms. Hollister must demonstrate, by clear and convincing evidence, that TBN's interests in the collateral are adequately protected. The determination of adequate protection implicates particularly important individual interests, namely the creditor's Fifth Amendment right not to have its property taken without just compensation, and is a special bankruptcy proceeding, not just a "typical civil case involving a monetary dispute between

private parties." *Addington v. Texas,* 441 U.S. 418. 423, 99 S. Ct. 1804, 1808, 60 L Ed. 2d 323 (1979); e.g., *Herman & Maclean v. Huddleston,* 459 U.S. 375, 389, 103 S. Ct. 683, 691, 74 L Ed. 2d 548 (1983) ("Thus, we have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake."). As the Supreme Court noted in *Addington*, the standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington,* 441 U.S. at 423, 99 S. Ct. at 1808. With a "preponderance of the evidence" standard, the parties "share the risk of error in roughly equal fashion," because "society has a minimal concern with the outcome ...." Id. When the interests at stake are more substantial, however, such as here where the secured creditor's Fifth Amendment rights are at stake, the higher "clear and convincing evidence" standard is required.

This heightened standard of proof is especially appropriate when a debtor intends to use the secured creditor's cash collateral, due to the special nature of this type of collateral. As noted by one court: Congress in enacting §363 of the Code gave a special treatment to "cash collateral" for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to assure that a holder of lien on "cash collateral" is not deprived of its collateral through unprotected use by the Debtor. *In re Mickler,* 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). For this reason, courts have recognized that "[t]he debtor's burden is greater in succeeding in a cash collateral motion than in withstanding a § 362(d) motion [to lift the automatic stay]." *In re 1606 New Hampshire Ave. Associates,* 85 B.R. 298, 309 (E.D. Pa. 1988). As acknowledged by these courts, Congress has provided special protection for a secured creditor's interest in cash collateral, as opposed to other types of collateral, indicating that courts should apply a stricter standard of proof than may by applied in other contested matters. See *In re Stacy Farms,* 78 B.R. 494, 498 (Bankr. S.D. Ohio 1987) ("[i]t is axiomatic that cash collateral is special in nature and must be well protected"); *In re Berens,* 41 B.R. 524 (Bankr. D. Minn. 1984) (definition of adequate protection in the context of § 363 is

considered to be uncompromising, in contrast to the standard under other sections of the Bankruptcy Code, because the debtor proposes to consume and use up cash collateral in its entirety); *In re Polzin*, 49 B.R. 370 (Bankr. D. Minn. 1985) (same).

To sustain its burden, regardless of whether a "clear and convincing" or "preponderance of the evidence" standard applies, Ms. Hollister cannot simply offer unsubstantiated lay testimony based upon mere hopeful predictions. To prove adequate protection exists, Ms. Hollister "must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it." *Bankwest N.A. v. Todd*, 49 B.R. 633, 635 (D.S.D. 1985). See also, *In re Llewellyn*, 27 B.R. 481, 487 (W.D. Pa. 1983) (unsubstantiated projections do not suffice); *In re Robert E. Derecktor, Inc.*, 137 B.R. 95 (Bankr. D. RI 1992) (moving papers which just ask for authority to use such collateral because the debtor "needs" to use it is not sufficient). Rather, Ms. Hollister must support her allegations with objective and convincing evidence that TBN's interests in the collateral will not be depreciated or eroded by her use of this property.

The only evidence offered to support the notion of adequate protection is an equity cushion based upon Ms. Hollister's opinion that the Paramour is worth $36 million (Hollister Decl. ¶5) Given Ms. Hollister's recent statement that the Paramour was worth $19 million, it is far from clear that there is an equity cushion that serves to protect the secured creditors from erosion in the value of any alleged equity cushion. While an owner of property is entitled to testify as to the value of her property, at issue is the weight, if any, to be afforded to it given her recent contradictory valuation. A court can reject the expert testimony of an appraiser if it feels the analysis is unreliable. *In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 872 (Bankr. D. Colo. 2001). The Court should likewise reject Ms. Hollister's proffer in this case, as she offers no analysis as to how this conclusion was reached.

### 3. Granting the Motion Would Violate the Underlying Policies of Chapter 11

While Ms. Hollister argues that where possible, issues should be resolved in favor of reorganization (Motion, p. 9), she ignores the two recognized policies underlying chapter 11 – "preserving going concerns and maximizing property available to satisfy creditors." *Bank of America National True and Sav. Ass'n v. 203 N. LaSalle Street, Partnership*, 526 U.S. 434, 453, 119 S.Ct. 1411, 1421 (1999). It is inimical to these basic bankruptcy policies to grant the Motion.[1]

## III. CONCLUSION

The evidence before the Court demonstrates that there is a significant monthly diminution in the value of the collateral and no corresponding benefit to the estate by the continued operation of the Paramour. The Paramour should be put up for sale immediately. If the Motion is granted, Ms. Hollister will continue to be able to live in her mansion, drive her Mercedes, and carry on her lavish life style. No showing has been made which would justify such an affront to her creditors.

TBN respectfully requests that the Court enter an Order:

    a. Requiring Ms. Hollister to provide TBN with adequate protection of TBN's interests in the collateral pursuant to 11 U.S.C. §§ 361 and 363 as a condition to her continued use, consumption or other disposition of such property, in a form acceptable to TBN and as requested above; and

---

[1] While not sought at present, there is a statement to the effect that Ms. Hollister will be seeking to pay professionals out of cash collateral. (Motion, p. 10) TBN objects to the payment of the professional fees from its cash collateral. Payment of the professional fees from TBN's cash collateral is tantamount to the imposition of a § 506(c) surcharge upon TBN's cash collateral. However, absent consent of the secured creditor, under § 506(c), a debtor must show a benefit to the secured creditor by the proposed expense. *In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1260 (9th Cir. 2000). Here, Ms. Hollister's use of the cash collateral to pay professional fees has no corresponding benefit to TBN. To the contrary, the payment of professional fees from its cash collateral will only further deplete TBN's collateral position. While Ms. Hollister cites *Security Leasing Partners, L,P. v, ProAlert, LLC (In re ProAlert, LLC)*, 314 B.R. 436 (B.A.P. 9th Cir, 2004), that case only allows for payment of fees if the requirements of § 506(c) are met.

1      b. Granting TBN such other and further relief as the Court deems just and equitable
2  or to which TBN may be entitled.
3  DATED: March 8, 2018        GREENBERG TRAURIG, LLP

           /s/ Howard J. Steinberg
           Howard J. Steinberg
           Attorneys for
           The Bird's Nest, LLC

# DECLARATION OF ERIC ROWEN

I do know, based upon my own personal knowledge, that the following facts are true and correct, and if called as a witness in this action, would and could testify as follows:

1. I am an attorney at law, duly licensed to practice in the State of California and before this Court. I am a shareholder at the firm of Greenberg Traurig, LLP.

2. At all times relevant hereto, I served as trial counsel to The Bird's Nest, LLC in an action pending in the Superior Court of the State of California for the County of Los Angeles, captioned *Roman Catholic Archbishop of Los Angeles, et al. v. Dana Hollister*, Case No. BC 585604 (the "State Court Action").

3. In the State Court Action, judgment was entered in favor of our client and against Ms. Hollister on February 5, 2018, for compensatory damages and punitive damages of $5,244,294 (the "Judgment").

4. In connection with the punitive damages stage of the trial, Ms. Hollister was required to produce a financial statement dated November 15, 2017 (the "Financial Statement"), setting forth her assets and liabilities, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference. When the values in the Financial Statement are compared with the values set forth in Ms. Hollister's Schedules filed in her bankruptcy case, there are significant disparities. By way of example, during the State Court Action she ascribed a value to her primary asset, "The Paramour", located at 1923 Micheltorena Street, Los Angeles, California, of $19 million; she now says that 3 months later, it is worth $36 to 40 million. She ascribed a value of $1.622 million to the 1910 Micheltorena Street property, yet now values it at $2.4 million. She valued her interest in Cliff's LLC at $210,000 yet now values it at $1 million. Attached hereto as Exhibit "B" and incorporated by reference are excerpts of Ms. Hollister's trial testimony in December 2017 where she testified under oath that the Paramour was worth $19 million. She also testified that her monthly living expenses where $3500; she now claims they are $8000.

5. After the Judgment was entered, among other things, we caused to be recorded an abstract of judgment in Los Angeles County and filed an application for order to appear for judgment

12

DECLARATION OF ERIC ROWEN

LA 133556567v1

debtor examination. Copies of those documents are attached hereto as Exhibits "C" and "D" and incorporated herein by this reference.

6. It also appears that Ms. Hollister engaged in some highly questionable transactions and transfers prior to her bankruptcy filing. By way of example, she set forth on her Financial Statement is a property at 1902 Micheltorena Street with a value of $2 million and a net value of $631,748. That property was allegedly sold yet Ms. Hollister has failed to account for the sales proceeds.

7. Attached hereto as Exhibit "E" and incorporated herein by this reference is a copy of the Schedules Ms. Hollister filed by Ms. Hollister in her bankruptcy case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 8th day of March, 2018, in Los Angles, California.

_____
ERIC ROWEN

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Greenberg Traurig LLP, 1840 Century Park East, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF THE BIRD'S NEST, LLC TO EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM AND FINAL BASIS AFTER FINAL HEARING; DECLARATION OF ERIC ROWEN; REQUEST TO TAKE JUDICIAL NOTICE OF BANKRUPTCY SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/8/18, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Dare Law    dare.law@usdoj.gov, Kenneth.g.lau@usdoj.gov,Alvin.mar@usdoj.gov,ron.maroko@usdoj.gov
- David A Tilem    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 3/8/18, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
VIA MESSENGER
Honorable Neil Bason
USBC
255 E. Temple Street, Suite 1552
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/8/18 | Terrine Pearsall | /s/ Terrine Pearsall |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**