David A. Tilem (SBN 103825)
LAW OFFICES OF DAVID A. TILEM
206 North Jackson Street, Suite 201
Glendale, California 91206
Tel: 888-257-7648 * 818-507-6000
     Fax:(818) 507-6800
DavidTilem@TilemLaw.com

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | ) Case No. **2:18-bk-12429-NB** |
| | ) |
| | ) Chapter 11 |
| | ) |
| | ) **NOTICE OF MOTION AND MOTION FOR** |
| | ) **ORDER AUTHORIZING USE OF ESTATE** |
| | ) **PROPERTY NOT IN THE ORDINARY** |
| | ) **COURSE OF BUSINESS; MEMORANDUM** |
| DANA HOLLISTER | ) **OF POINTS AND AUTHORITIES;** |
| | ) **DECLARATIONS IN SUPPORT THEREOF** |
| | ) |
| | ) Date: May 3, 2018 |
| | ) Time: 2:00 p.m. |
| | ) Ctrm: 1545 |
| | )     255 E. Temple St. |
| Debtor. | )     Los Angeles, CA 90012 |
| _____ | ) |

**TO THE HONORABLE NEIL BASON, UNITED STATES BANKRUPTCY JUDGE, THE**

**OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

**NOTICE IS HEREBY GIVEN** that Dana Hollister ("Debtor") seeks

the entry of Orders authorizing her use of estate property for a

non-ordinary course transaction.

Specifically, Debtor proposes to use her authority, as the

sole equity holder of Bridge Tavern, LLC, to cause that entity to

liquidate its assets and wind up its affairs.

This Motion is based upon this Notice, the attached Memorandum

1   of Points and Authorities, the Declarations of Dana Hollister and

2   Leslie Haro, and such additional matters as may be considered by

3   this Court at the time the Motion is heard.

4       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy

5   Rule 9013-1(f), all parties who wish to oppose this Motion must

6   file and serve a written response no later than 14 days before the

7   date designated for hearing.  Failure to timely file and serve

8   required papers may be deemed by the Court to be consent to the

9   granting of the Motion.

10   Dated: April 9, 2018           LAW OFFICES OF DAVID A. TILEM

11

12                          By: _____

13                            David A. Tilem, Attorneys

                               for Debtor and Debtor-In-

14                            Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### JURISDICTION AND APPLICABLE LAW

4   The court has jurisdiction over the Motion pursuant to 28

5   U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C.

6   § 157(b)(2)(A) and (D).  Venue is proper in this district pursuant

7   to 28 U.S.C. §§ 1408 and 1409.

8   The statutory predicates for the relief requested are section

9   363(b)(1) of the Bankruptcy Code[1] and Federal Rules of Bankruptcy

10  Procedure ("FRBP") 2002 and 6004.

11

### II.

12

### RELIEF SOUGHT

13  Debtor seeks leave under Bankruptcy Code §363(b) to use her

14  authority, as the sole equity holder of Bridge Tavern, LLC to cause

15  that entity to liquidate its assets and wind up its affairs.

16

### III.

17

### BACKGROUND

18  Debtor filed a voluntary Chapter 11 petition commencing this

19  reorganization case on March 6, 2018 (the "Petition Date").

20  Debtor owns various assets and is an equity holder in several

21  entities.  One of those is Bridge Tavern, LLC.  Debtor is the only

22  equity holder in Bridge Tavern, LLC.

23  Until shortly before the case was filed, Bridge Tavern

24  operated a restaurant doing business as Villain's Tavern at 1356

25  Palmetto Street, Los Angeles, CA 90013.  As a result of some labor

26  issues, the restaurant ceased operating at our about the Petition

27

28   [1]   Title 11, United States Code, § 101, et seq. – referred to
here as the "Bankruptcy Code" or, simply, the "Code."

1  date.

2      Debtor is personally responsible as a guarantor on the lease

3  for that property.  As such, the ongoing lease obligation is a

4  claim against the estate. Further, Debtor was convinced that, if

5  appropriately marketed, she could find a buyer for the restaurant.

6  For that reason, she has continued to pay the minimal expenses,

7  including rent, needed to maintain a marketable "shell" of the

8  restaurant.

9      Debtor was correct.  Active marketing efforts, which began

10  when this case was filed, ultimately yielded 5 potential buyers

11  willing to purchase the Villain's Tavern, "as is", for $450,000,

12  subject to the existing lease terms.  After countering to all, two

13  of them increased the proposed purchase price to $495,000.

14      Debtor wants to sell the restaurant to Payman Bahmani and wind

15  up the operations of Bridge Tavern, LLC.  Debtor believes that the

16  proposed sale will: eliminate on ongoing drain from her cash flow;

17  allow her to devote greater attention to her other business

18  ventures; and, while final numbers are not yet available, generate

19  net sale proceeds of approximately $250,000 which can be up-

20  streamed to the Estate.

21      To be clear, this is not a sale of estate assets.  A motion

22  for leave to sell the restaurant is not required.  Instead, this

23  motion seeks leave of Court so that the Debtor may "use" her equity

24  in Bridge Tavern, LLC to cause that entity to sell its assets and

25  wind up its affairs.  Such "use" is admittedly not an "ordinary

26  course" transaction.  This motion seeks that authority pursuant to

27  §363(b).

28      Because the seller is not the Debtor, but rather an entity

1  owned by the Debtor, authorization to employ the broker involved in

2  the transaction is probably not necessary.  She has done so in any

3  event.  A separate motion for that purpose is also set for hearing

4  on May 3, 2018.

5                                 **IV.**

6        **USE OF ESTATE PROPERTY OUTSIDE THE ORDINARY COURSE**

7             **OF BUSINESS IS APPROPRIATE IN THIS CASE**

8        In deciding whether to allow the use or sale of property of

9  the estate under §363(b), a Bankruptcy Judge has considerable

10 discretion.  <u>In re Crutcher Resources Corp.</u>, 72 B.R. 628, 631

11 (Bankr. N.D. Tex. 1987).  Section 363(b)(1) provides that:

12        The trustee, after notice and a hearing, may use ...,
          other than in the ordinary course of business, property
13        of the estate ...[2]

14       The Court may approve the use if debtor has a valid business

15 justification and the proposed use is in good faith.  <u>In re 240</u>

16 <u>North Brand Partners, Ltd.</u>, 200 B.R. 653, 659 (9th Cir. BAP

17 1996)(wherein the 9th Circuit Bankruptcy Appellate Panel held that

18 Debtors who wish to utilize section 363(b) and sell or use property

19 of the estate must demonstrate that such disposition has a valid

20 business justification.); <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1070

21 (2d Cir. 1983).

22 **A.    DEBTOR HAS A VALID BUSINESS JUSTIFICATION TO ACT**

23       As set forth above, Debtor has a number of reasons to sell the

24 Villain's Tavern restaurant.  First, the proposed sale will

25 eliminate on ongoing drain from her cash flow.  Second, a sale will

26 permit her to devote greater time and attention to her other

27

28        [2]    Since the Debtor is the Debtor-in-possession, it has all the
rights and duties of a bankruptcy trustee.  11 U.S.C. §1107(a).

1  business ventures.  Last, while final numbers are not yet

2  available, Debtor believes that the proposed sale will generate net

3  sale proceeds of approximately $250,000 which can be up-streamed to

4  the Estate.

5      Debtor believes that the proposed selling price has been

6  validated by the broker's efforts to market the restaurant, by the

7  fact that several offers were received at $450,000 and that this

8  offer was the best and strongest of those received after a counter-

9  offer to all.

10     Debtor does not believe it would be in the best interests of

11 the estate to delay the proposed sale.  As set forth in the

12 attached Declaration of Leslie Haro, there are several restaurants

13 for sale in the vicinity of the Villain's Tavern.  Any delay is

14 likely to cause the proposed buyer to refocus on another property,

15 leaving the Debtor with no buyer.  It may also depress the sale

16 price.

17     As set forth in her Declaration, Debtor has no relationship or

18 affiliation with the proposed buyer.

19 **B.**   **THE PROPOSED USE OF ESTATE PROPERTY IS IN GOOD FAITH**

20     A debtor must also show that the use and sale of property of

21 the estate is proposed in good faith. <u>In re Wilde Horse</u>

22 <u>Enterprises, Inc.</u>, 136 B.R. 830, 841 (Bankr. C.D.Cal. 1991).

23 ("'Good faith' encompasses fair value, and further speaks to the

24 integrity of the transaction. Typical 'bad faith' or misconduct,

25 would include collusion between the seller and buyer, or any

26 attempt to take unfair advantage of other potential purchasers").

27     The restaurant was marketed by a professional and independent

28 broker and agent.  The Debtor obtained several offers for the

1  property, all were, coincidentally, at $450,000.  Only two of those

2  potential buyers was willing to increase the offer to $450,000.

3  Debtor has selected the one with the stronger financial picture.

4                                    **IV.**

5                              **CONCLUSION**

6       The Debtor has a valid business justification for the use

7  estate property which it has proposed in good faith.  All

8  interested parties benefit because the a drain on Debtor's cash

9  flow will be eliminated, a potential lease guaranty claim will be

10 eliminated, and the Estate will receive the net sale proceeds.

11      For the foregoing reasons, Debtor respectfully request Orders

12 which:

13      1.    Authorize her use of the equity in Bridge Tavern,

14 LLC to consummate the proposed sale;

15      2.    Authorize her use of the equity in Bridge Tavern,

16 LLC to wind up its affairs;

17      3.    Authorize her to compensate the broker and pay all

18 other costs of completing the proposed transaction;

19      4.    For such other relief as may be necessary or

20 appropriate.

21 Dated: March 4/9, 2018            LAW OFFICES OF DAVID A. TILEM

22

23                                  By: _____

24                                      David A. Tilem, Attorneys
                                        for Debtor and Debtor-in-
                                        Possession

25

26

27

28

1    **<u>DECLARATION OF LESLIE HARO</u>**

2  I, Leslie Haro, state as follows:

3    1.    I am a an individual who lives within the County of Los

4  Angeles, California.

5    2.    This statement is based on my personal knowledge and my

6  expertise.   If asked to do so, I would testify to the statements

7  made below.

8    3.    I am an independent contractor working with Urbanlime

9  Real Estate and an Associate Broker.   Urbanlime is a full-service

10 commercial real estate brokerage specializing in hospitality and

11 entertainment acquisitions, dispositions and landlord/tenant

12 advisory services.

13    4.    I have been doing this work for 5 years.

14    5.    I have previously assisted Ms. Hollister in the sale of a

15 restaurant in the downtown Arts District.

16    6.    Ms. Hollister first asked me to help her actively market

17 the Villain's Tavern restaurant after she filed her Chapter 11 case

18 in March, 2018.

19    7.    I marketed it via an email campaign to about 20,000 of

20 the firm's contacts who are known to be qualified and seasoned

21 operators and brokers of restaurants.

22    8.    Within 30 days I received 5 offers, all at $450,000.   At

23 the suggestion of Ms. Hollister's attorney, I countered to all and

24 two of them agreed to increase the purchase price to $495,000.

25    9.    I recommended the sale to Payman Bahmani because of his

26 financial strength and prior restaurant operating experience.

27    10.   It is my opinion that if the sale is delayed or Ms.

28 Hollister is required to sell the restaurant via an auction, we

1  would likely lose this buyer.  It would also seriously damage the

2  good will of the restaurant and depress the price for any future

3  buyer.

4      I declare under penalty of perjury under the laws of the

5  United States of America that the foregoing is true and correct and

6  that this declaration was executed on April 9, 2018 at Los Angeles,

7  California.

8

9

10                                           Leslie Hard

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF DANA HOLLISTER

I, Dana Hollister, state as follows:

1.    I am the debtor and debtor in possession in this case.

2.    This statement is based on my personal knowledge.  If asked to do so, I would testify to the statements made below.

3.    I am the sole equity holder of Bridge Tavern, LLC which owns and operates Villain's Tavern.

4.    Until shortly before the case was filed, Bridge Tavern operated a restaurant doing business as Villain's Tavern at 1356 Palmetto Street, Los Angeles, CA 90013.  As a result of some labor issues, the restaurant ceased operating at our about the Petition date.

5.    I am personally responsible as a guarantor on the lease for that property.  Further, I was convinced that, if appropriately marketed, I could find a buyer for the restaurant.  For that reason, I have continued to pay the minimal expenses, including rent, needed to maintain a marketable "shell" of the restaurant.

6.    After the hearing on March 9, 2018, I contacted Leslie Haro and told her to begin actively marketing the Villain's Tavern restaurant.

7.    Ms. Haro's efforts yielded 5 potential buyers willing to purchase the Villain's Tavern, "as is", for $450,000, subject to the existing lease terms.  After countering to all, two of them increased the proposed purchase price to $495,000.

8.    I prefer to sell the restaurant to Payman Bahmani because he has a strong financial statement and he is an experienced restaurant operator.  A true and correct copy of the Purchase Agreement is attached as Exhibit "1".

1     9.   I want to sell the restaurant and wind up the operations

2 of Bridge Tavern, LLC because it will: eliminate on ongoing drain

3 on my cash flow; allow me to devote greater attention to other

4 business ventures; and, while final numbers are not yet available,

5 generate net sale proceeds of approximately $250,000 which can be

6 up-streamed to the Estate.

7     10.  I have no prior or existing relationship with Paymen

8 Bahmani.  I am not are of any relationship which I might have with

9 any entity which he may own or control.

10     I declare under penalty of perjury under the laws of the

11 United States of America that the foregoing is true and correct and

12 that this declaration was executed on April 9, 2018 at Los Angeles,

13 California.

15                             Dana Hollister

**"EXHIBIT 1"**

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B600E446F8FF

CALIFORNIA
ASSOCIATION
OF REALTORS®

**DISCLOSURE REGARDING
REAL ESTATE AGENCY RELATIONSHIP**
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☒ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.

(b) A duty of honest and fair dealing and good faith.

(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.

(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

| | | |
|---|---|---|
| ☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant  _Payman Bahmani_  Payman Bahmani and/or assignee | | Date _04/07/2018_ |
| ☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant | | Date _____ |
| Agent _Urbanlime Real Estate_  Real Estate Broker (Firm) | BRE Lic. # _02035797_ | |
| By _____  (Salesperson or Broker-Associate)  _Leslie Haro_ | BRE Lic. # _01829061_ | Date _04/07/2018_ |

Agency Disclosure Compliance (Civil Code §2079.14):

• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.

• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

| | | |
|---|---|---|
| Seller/Landlord _____  _Dana Hollister / Bridge Tavern LLC_ | Date _4/8/18_ | Seller/Landlord _____  Date _____ |

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

| Reviewed by _____ | Date _____ |

AD REVISED 12/14 (PAGE 1 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Aspire Los Angeles, 555 W 5th St, 35th Floor Los Angeles CA 90013          Phone: (213)935-0050          Fax: 3233001001          Payman // Villains
Letty Vermeulen Hernandez          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. The term "sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.

(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or

(Name of Selling Agent if not the same as the Listing Agent) ☐ both the buyer and seller.

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
• 525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____



**AD REVISED 12/14 (PAGE 2 OF 2)**

## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Payman // Villains

**CALIFORNIA**
**ASSOCIATION**
**OF REALTORS®**

## BUSINESS PURCHASE AGREEMENT AND
## JOINT ESCROW INSTRUCTIONS
(C.A.R. Form BPA, Revised 11/14)

Date Prepared: _April 7, 2018_

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _____ _Payman Bahmani and/or assignee_ _____ ("Buyer"),
   ☒ Individual(s), ☐ a Partnership, ☐ a Corporation, ☐ an LLC, ☐ an LLP, ☐ Other _____.
   B. **THE BUSINESS** to be acquired is _____ _Villains Tavern_ _____, situated in
   _Los Angeles_ (City), _Los Angeles_ (County), California, _90013-2229_ (Zip Code)
   C. **THE PURCHASE PRICE** offered is _Four Hundred Ninety-Five Thousand_
   _____ Dollars $ 495,000.00_.
   D. **INVENTORY** valued at approximately $ _____, including work in progress, is included in the purchase price.
   E. **CLOSE OF ESCROW** shall occur on ☒ _see par. 24_ (date) or ☐ _____ **Days** After Acceptance).
   F. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
   Listing Agent _____ _Urbanline Real Estate_ _____ (Print Firm Name) is the agent of (check one):
   ☐ the Seller exclusively; or ☒ both the Buyer and Seller.
   Selling Agent _____ _Urbanline Real Estate_ _____ (Print Firm Name) (if not the same as the Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller.

3. **PAYMENT OF PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _49,500.00_
   (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____);
   OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____) to the agent submitting the offer (or to _____), made payable to _____. The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____).
   Deposit checks given to agent shall be an original signed check and not a copy.
   (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of. . . . . $ _____
   within _____ **Days** After Acceptance, (or _____).
   If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Business. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
   (1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ _____
   This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ Small Business Administration, secured by Buyer's own real property, or if real property is included in the sale, then by that real property, ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   (2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ Small Business Administration, secured by Buyer's own real property, or if real property is included in the sale, then by that real property, ☐ Other _____. This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
   E. **LOAN SECURED BY BUSINESS ASSETS IN THE AMOUNT OF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   Evidenced by a note in favor of Seller secured by the assets of the Business, together with a security agreement in the usual and customary form covering all assets of the Business, and a UCC-1 filing to be filed with the Secretary of State, which shall include proceeds of collateral, in ☐ first or ☐ second position. The loan shall be at a fixed rate not exceed _____ % or, ☐ an adjustable rate with an initial rate not to exceed _____ %. Buyer shall have the right, at Buyer's expense, to conduct a valuation of the assets within the time specified in paragraphs 8 and 25. If the assets' value is less than the amount of the loan provided for in this paragraph 3E, then the difference between the amount of the loan specified in this paragraph 3E, less the value of the assets, shall become an unsecured loan.

Buyer's Initials ( _____ )( _____ )                                    Seller's Initials ( _____ )( _____ )

© 1989-2014, California Association of REALTORS®, Inc.
**BPA REVISED 11/14 (PAGE 1 OF 9)**

## BUSINESS PURCHASE AGREEMENT (BPA PAGE 1 OF 9)

Aspire Los Angeles, 555 W 5th St, 35th Floor Los Angeles CA 90013                    Phone: (213)935-0050    Fax: 3233001001    Payman // Villains
Letty Vermeulen Hernandez                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B6AEA4ADF39A

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_      Date: _April 7, 2018_

F. **ADDITIONAL FINANCING TERMS:** ..................................................... $ _____

_____
_____
_____
_____
_____
_____

G. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of ..................... $ _445,500.00_
to be deposited with Escrow Holder pursuant to Escrow Holder Instructions.

> **CAUTION:** Obligations secured by mixed collateral (i.e., both personal and real property) are subject to complex rules and court decisions under the California Civil Code, Commercial Code and the Code of Civil Procedure. Buyer and Seller are strongly cautioned to consult legal counsel in connection with the securing and enforcement of any such obligations.

H. **PURCHASE PRICE (TOTAL):** ................................................................ $ _495,000.00_

I. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3K(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

J. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Business by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 25B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

K. **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within **3 (or ___ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Business to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

(3) **LOAN CONTINGENCY REMOVAL:** Within **21 (or ___ ) Days** After Acceptance, Buyer shall, as specified in paragraph 25, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Business, Seller may be entitled to Buyer's deposit or other legal remedies.

(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

L. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Business and close escrow as specified in this Agreement

4. **ESCROW AND TITLE:**
A. **ESCROW HOLDER:** ☒ Buyer ☒ Seller shall pay escrow fees _50/50_ _____. Escrow Holder shall be _Wilshire Escrow_ _____. The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general instructions.

B. (1) **FORM OF OWNERSHIP:** The Business shall be owned in the form designated in Buyer's escrow instructions. THE MANNER OF TAKING TITLE AND THE FORM OF OWNERSHIP OF THE BUSINESS MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

(2) **TITLE:** Seller shall furnish to Buyer bills of sale and other instruments of transfer or assignment necessary to carry out this Agreement

5. **CLOSING AND POSSESSION:**
A. Possession shall be delivered to Buyer at 6PM or ☐ _____ AM/ ☐ PM, on the date of Close Of Escrow; ☐ on _____; or ☐ no later than _____ calendar days after Close Of Escrow. If Seller also owns the real property upon which the Business operates and transfer of title to the real property and possession of the Business do not occur at the same time, Owner and Buyer are advised to: (i) enter into a written agreement regarding possession; and (ii) consult with their insurance and legal advisors or other appropriate professional(s).

Buyer's Initials ( _____ )( _____ )      Seller's Initials ( _____ )( _____ )

**BPA REVISED 11/14 (PAGE 2 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 2 OF 9)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      Payman // Villains

**16**

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B60D0FFA9B84

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_ _____ Date: _April 7, 2018_

   **B.** At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.
   **C.** At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems and alarms.

**6.** **ASSETS TRANSFERRED:** With the exception of cash or cash equivalents on deposit in any financial institution, and assets excluded below, Buyer is purchasing all assets of the Business, including but not limited to: inventory for sale, machinery, furniture, fixtures and other equipment, leasehold improvements, transferable government licenses and permits, customer lists, fictitious business names, trade names and trademarks, logos, copyrights and patents, signs and advertising materials, telephone and fax numbers, web sites, URL names, e-mail addresses, accounts receivable, vendor lists and catalogs, goodwill, agreements not to compete, franchise agreements, distribution rights, employee lists and information, computer and customer software, and customer deposits. All items transferred that are leased are subject to the terms of existing lease(s).
   ☐ Other _____
   Excluded asset _____

**7.** **LIABILITIES TRANSFERRED:** Buyer is NOT purchasing any liabilities of the Business, EXCEPT those items checked below:
   **A.** ☐ Accounts payable, per attached list.
   **B.** ☐ Service, maintenance and advertising agreements, per attached list.
   **C.** ☒ Other _leasehold_ _____.

**8.** ☐ **INVENTORY:**
   **A.** Buyer's acceptance of inventory is a contingency of this Agreement. Buyer shall have the right, at Buyer's expense, within the time specified in paragraph 25, to conduct a physical inventory and, in writing, remove the contingency or cancel this Agreement.
   **B.** Buyer has the right to confirm the inventory within **5 (or ☐ ____ ) Days** Prior to Close Of Escrow. The purchase price shall be adjusted to reflect the remaining inventory. The adjustment is to be added to or subtracted from the ☐ cash down payment; or ☐ seller financing.

**9.** **SELLER DISCLOSURE; BUYER INVESTIGATION:**
Seller shall, within the time specified in paragraph 25, provide to Buyer, or to Buyer's counsel, accountant or other designated representative, the lists of items or documents, or Copies thereof, for the items checked below. For each item, as applicable, Seller shall include a statement of whether the item is owned or leased and whether Seller has any legal, proprietary interest, or intellectual property rights in, or restrictions on, the item. Buyer, within the time specified in paragraph 25, shall then investigate the items provided to Buyer and take the action specified in paragraph 25.

| | |
|---|---|
| ☐ Inventory, including work in progress | ☒ Signs and advertising materials |
| ☐ Machinery | ☐ Telephone and fax numbers |
| ☐ Furniture, fixtures and other equipment | ☒ Websites, URL names and e-mail addresses |
| ☐ Other personal property | ☐ Vendor lists and catalogs |
| ☒ Leasehold improvements | ☐ Goodwill |
| ☒ Government licenses and permits | ☐ Agreements not to compete |
| ☐ Customer lists | ☐ Franchise agreements |
| ☒ Fictitious business name statements | ☐ Distribution rights |
| ☒ Trade names and trademarks | ☐ Employee lists and information |
| ☒ Logo | ☒ Computer and customer software |
| ☒ Copyrights and patents | ☐ Customer deposits |
| ☐ Schedule of accounts receivable | ☒ Lease |
| ☐ Business appraisal | |
| ☒ Other assets: _License # 471304_ | |
| ☐ Schedule of accounts payable | ☐ Service, maintenance and advertising agreements |
| ☐ Other liabilities: | |
| ☐ Employee estoppel certificates | ☐ Proposed allocation of purchase price among assets |
| ☐ Sales tax returns for the years. . . . . . . . . . . . . . . . . . | _____ to _____ |
| ☐ Federal and state income tax returns for the years . . . . | _____ to _____ |
| ☒ Financial statements for the years. . . . . . . . . . . . . . . . | _2010_ to _2017_ |
| ☐ Employment withholding returns for the years . . . . . . . | _____ to _____ |

SELLER REPRESENTS THAT: (i) THE BOOKS AND RECORDS THAT OWNER PROVIDES ARE THOSE MAINTAINED IN THE ORDINARY AND NORMAL COURSE OF BUSINESS; AND (ii) FEDERAL AND STATE TAX RETURNS THAT SELLER PROVIDES ARE COPIES OF THOSE FILED WITH THE APPLICABLE GOVERNMENTAL AGENCIES.

**10.** **CONSULTING AND TRAINING:** Seller shall consult with Buyer to show Buyer methods used in operating the Business. Seller shall provide consulting services for a period of _____ **Days** After Close Of Escrow at no cost to Buyer, which services shall not exceed a total of _____ hours. Seller shall not be responsible for training Buyer in the basics of operating a business of the type being sold pursuant to this Agreement, but only to alert Buyer to the nuances, as determined by Seller, of operating this type of business. **NOTE TO BUYER: IF YOU ARE NOT ALREADY TRAINED IN THIS TYPE OF BUSINESS, YOU ARE STRONGLY ADVISED TO SEEK TRAINING.**

**11.** ☐ **AGREEMENT NOT TO COMPETE:** As a material part of the consideration of the sale, Seller agrees not to operate or engage in, directly or indirectly, whether as a principal, agent, manager, employee, owner, member, partner, stockholder, director or officer of a corporation, trustee, consultant, or any other capacity whatsoever, any business the same as, or substantially similar to, or in competition with the Business within a radius of _____ miles from the current location of the Business (or ☐ _____ ) for a period of _____ year(s) from the date of final transfer of the Business, so long as Buyer, or Buyer's successor-in-interest, is operating the Business in said area.

Buyer's Initials ( _PP_ ) ( _____ )  Seller's Initials ( ___ ) ( _____ )
**BPA REVISED11/14 (PAGE 3 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 3 OF 9)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Payman // Villains

**17**

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B60...

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_____   Date: _April 7, 2018_

**12. LEASE (Check applicable items):** The sale is contingent upon Buyer obtaining, within **21 (or ☒ _14_____ ) Days** After Acceptance, the assignment, new lease, option to extend, sublease or other lease as indicated below. Buyer shall submit an application for such lease to Seller's landlord or Seller, as applicable, within **15 (or ☒ _5_____ ) Days** After Acceptance.

   **A.** ☒ An assignment of Seller's existing lease.
   **B.** ☐ A new lease with Seller's landlord, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow.
   **C.** ☐ An option to extend Seller's present lease for an additional _____ year(s), on terms acceptable to Buyer and Seller's landlord.
   **D.** ☐ A sublease with Seller, on terms acceptable to Buyer, to become effective concurrently with the Close Of Escrow.
      **Buyer and Seller are advised that such sublease may require notice to or approval of Seller's landlord.**
   **E.** ☐ OTHER: _____

**13.** ☐ **PURCHASE OF REAL PROPERTY:** The sale is contingent upon Buyer's ability to purchase, concurrently with the Close Of Escrow, the real property in which the Business operates. **A separate Real Property Purchase Agreement is required (C.A.R. Form CPA).**

**14. LICENSES:**
   **A. LIQUOR:** If transfer of a liquor license is included in this sale, Seller shall comply with the Alcoholic Beverage Control Act concerning such transfer. Escrow shall not close, and no funds shall be transferred to Seller, until Escrow Holder is advised by the State of California Department of Alcoholic Beverage Control that the license transfer has been approved. The costs of such transfer shall be paid _equally between buyer and seller_
   **B. OTHER:** This sale is contingent upon Buyer's obtaining, prior to the Close Of Escrow, the license(s) indicated below. Buyer shall apply for such license(s) within **15 (or ☐ _____ ) Days** After Acceptance:
      **1.** ☐ City license: _____
      **2.** ☐ State license: _____
      **3.** ☐ Other: _____

**15. FRANCHISE:** If the Business is a franchise, in addition to being subject to Buyer's acceptance of the terms of franchise as provided in paragraph 9, the sale is also contingent upon Franchisor's acceptance of Buyer.

**16. SALES AND USE TAX:** Buyer shall pay any sales or use tax payable as a result of the sale under any Law and shall furnish Seller with Resale Certificates for any items bought for resale.

**17. PRORATIONS:** Personal property taxes, business taxes, rents, interest, insurance acceptable to Buyer, and prepaid deposits shall be prorated as of Close Of Escrow (or ☐ _____ ).

**18. TAX CLEARANCES:** Seller shall deliver to Escrow Holder proof that city (if applicable), state and federal income tax withholdings are current. Amounts withheld but not yet payable will be transferred in escrow or credited to Buyer. Seller shall also deliver to Escrow Holder any clearance documents available from the State Board of Equalization or Employment Development Department regarding S.D.I. unemployment insurance and FICA withholdings. No funds shall be released from escrow before such delivery.

**19. NOTICES OF VIOLATIONS:** Seller represents that, to the best of Seller's knowledge, no notices of violations of federal, state or local statute(s), law(s) or regulation(s) exist, or are filed or issued, that affect the operation of the Business, including any such notices regarding the real property in which the Business is situated ("Notices"), EXCEPT: _____

   If prior to Close Of Escrow, Seller receives or becomes aware of any Notices filed against or affecting the Business, Seller shall immediately notify Buyer.

**20. BULK TRANSFER:** Seller shall comply with the Bulk Sales provision of Division 6 of the Uniform Commercial Code, Bulk Transfer Section, as the law applies within the Seller's state.

**21. LIENS; ENCUMBRANCES; RESTRICTIONS:** Seller warrants that, to the best of Seller's knowledge, there are no undisclosed liens, encumbrances or restrictions upon the Business.

**22. OPERATION OF BUSINESS DURING ESCROW:** During the escrow period, Seller shall: **(i)** operate the Business diligently and in substantially the same manner as prior to this offer; **(ii)** maintain the goodwill of the Business; **(iii)** keep all equipment and personal property in normal working order; and _____

**23. SELLER REPRESENTATIONS:** Seller's representations and warranties set forth herein, or in any written statements delivered to Buyer, shall be true and correct at Close Of Escrow, and shall survive the transfer of ownership of the Business.

**24. OTHER TERMS AND CONDITIONS,** including attached supplements:
   - _Two escrows shall be opened, one for the transfer and sale of the Type 48 liquor license # 471304 and a second escrow_
   _for the bulk assets._
   - _Anticipated close of escrow for Bulk assets is 30 days following the opening of escrow._
   - _Buyer shall take possession of the premises upon issuance of temporary license from abc and the close of escrow for_
   _the bulk assets._
   - _Broker commission in the amount of $49,500 shall be paid via close of escrow of Bulk Assets._

   _SALE SUBJECT TO BANKRUPTCY COURT APPROVAL._

   _____
   _____
   _____
   _____
   _____

Buyer's Initials ( _PP_ )( _____ )                              Seller's Initials ( _D_ )( _____ )

**BPA REVISED 11/14 (PAGE 4 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 4 OF 9)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Payman // Villains

**18**

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B6D16A86F6A5

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_ _____    Date: _April 7, 2018_

**25. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

    **A. SELLER HAS: 7 (or ☐ ___ ) Days** After Acceptance to Deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraph 9. Buyer may give Seller a Notice to Seller to Perform (C.A.R. Form NSP) if Seller has not Delivered the items within the time specified.

    **B. BUYER SHALL,** within the times set forth below, take the specified action and, in writing, either remove the applicable contingency or cancel this Agreement:

        **(1) BUYER HAS: 17 (or ___ ) Days** After Acceptance to complete all buyer investigations, unless otherwise agreed in 25B(2), approve all disclosures, reports and review of reports and other applicable information, for which Buyer is responsible or which Buyer receives from Seller; and approve all other matters affecting the Business.

        **(2) ☐ (If checked) BUYER HAS: 30 (or ☐ ___ ) Days** After Acceptance to complete any geologic, soil and environmental inspections.

        **(3)** Within the time specified in 25B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either **(i)** a removal of the applicable contingency (C.A.R. Form CR), or **(ii)** a cancellation (C.A.R. Form CC) of this Agreement based upon a contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 25A, then Buyer has **5 (or ☐ ___ ) Days** After Delivery of any such items, or the time specified in 25B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

        **(4) Continuation of Contingency:** Even after the end of the time specified in 25B(1) and before Seller cancels this Agreement, if at all, pursuant to 25C, Buyer retains the right to either **(i)** in writing remove remaining contingencies, or **(ii)** cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 25C(1).

    **C. SELLER RIGHT TO CANCEL:**

        **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.

        **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: **(i)** if Buyer fails to deposit funds as required by 3A or 3B; **(ii)** if the funds deposited pursuant to 3A or 3B are not good when deposited; **(iii)** if Buyer fails to Deliver a letter as required by 3K; **(iv)** if Buyer fails to Deliver verification as required by 3C or 3I; or **(v)** if Seller reasonably disapproves of the verification provided by 3C or 3I. In such event, Seller shall authorize return of Buyer's deposit.

        **(3) Notice To Buyer To Perform:** The NBP shall: **(i)** be in writing; **(ii)** be signed by Seller; and **(iii)** give Buyer at least **2 (or ☐ ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 25C(2).

    **D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ___ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 25.

    **E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

    **F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ___ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

    **G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

**26. BROKERS:**

    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: **(i)** Brokers do not decide what price Buyer should pay or Seller should accept; **(ii)** Brokers do not guarantee the performance or repairs of others who have provided services or products to Buyer or Seller; and **(iii)** they will seek legal, tax, insurance, title and other assistance from appropriate professionals.

Buyer's Initials ( ___ ) ( ___ )    Seller's Initials ( ___ ) ( ___ )

**BPA REVISED 11/14 (PAGE 5 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 5 OF 9)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Payman // Villains

**19**

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B66A67800FEF

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_                    Date: _April 7, 2018_

    **C. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Business, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

**27. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 45 or 46 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which the party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A.** **The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4, 8B, 13, 14A, 17, 18, 20, 24, 25G, 27, 28, 36, 43, 44, 45, 46, and paragraph D of the section titled Real Estate Brokers on page 9. If a Copy of the separate compensation agreement(s) provided for in paragraph 26A, or paragraph D of the section titled Real Estate Brokers on page 9 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 4. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days After** Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller.

    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 26A and paragraph D of the section titled Real Estate Brokers on page 9. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 26A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: **(i)** if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or **(ii)** if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

**29. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

    **A.** **Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

    **B.** **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement.**

                            Buyer's Initials ____/____                    Seller's Initials _D_ / ____

**30. DISPUTE RESOLUTION:**

    **A.** **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers **(www.consumermediation.org)** or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 30C.

Buyer's Initials ( _PP_ ) ( _____ )                    Seller's Initials ( _D_ ) ( _____ )

**BPA REVISED 11/14 (PAGE 6 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 6 OF 9)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Payman // Villains

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B60FD884EF94

Business Address: _1356 Palmetto St, Los Angeles, CA 90013-2229_ _____ Date: _April 7, 2018_

**B. ARBITRATION OF DISPUTES:**

The Parties agree that any dispute or claim in law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 30C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _____ / _____                Seller's Initials _____ / _____

**C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: i) the filing of a court action to preserve a statute of limitations; ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**31. ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Business.

**32. AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Business is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

**33. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**34. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**35. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 30A.

**36. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

Buyer's Initials ( _PP_ ) ( _____ )                Seller's Initials ( _____ ) ( _____ )

**BPA REVISED 11/14 (PAGE 7 OF 9)**

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 7 OF 9)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Payman // Villalon

DocuSign Envelope ID: 3A377705-B386-4B3E-9F9A-B60FD261E89F

Business Address: _1356 Palmetto St, Los Angeles, CA  90013-2229_                              Date: _April 7, 2018_

**37. SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

**38. COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals, and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

Business Address: *1356 Palmetto St, Los Angeles, CA  90013-2229*                    Date: *April 7, 2018*

**46. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement.
Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and
acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ **(If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:**

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached
Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date *4/8/18*  SELLER _____

(Print name) *Dana Hollister / Bridge Tavern LLC*

Date _____  SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(_____ / _____ ) **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
  (Initials)    personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
        ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by
Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this
confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence
the date that Confirmation of Acceptance has occurred.**

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker (**Selling Firm**) and Cooperating
Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker
is a Participant of the MLS in which the Business is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker
are not both Participants of the MLS, or a reciprocal MLS, in which the Business is offered for sale, then compensation must be
specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to
document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) *Urbanlime Real Estate*                          CalBRE Lic. # *02035797*
By _____ *Leslie Haro* CalBRE Lic. # *01829061*    Date _____
By _____ *Tyler Del Re* CalBRE Lic. # *01947880*    Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Real Estate Broker (Listing Firm) *Urbanlime Real Estate*                          CalBRE Lic. # *02035797*
By _____ *Leslie Haro* CalBRE Lic. # *01829061*    Date _____
By _____ *Tyler Del Re* CalBRE Lic. # *01947880*    Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked,) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder *Wilshire Escrow* _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
              Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
          Seller's Initials

©1989- 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this
form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020
**BPA REVISED 11/14 (PAGE 9 OF 9)**

Buyer's Acknowledge that page 10 if part of
this Agreement ( _____ ) ( _____ )

Reviewed by
Broker or Designee _____

**BUSINESS PURCHASE AGREEMENT (BPA PAGE 9 OF 9)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          Payman // Villains

39. **RISK OF LOSS:** Any risk of loss to the Business shall be borne by Seller until ownership has been transferred to Buyer.

40. **DAMAGE OR DESTRUCTION:** If the Business or real property in which the Business is situated is destroyed or materially damaged prior to Close Of Escrow, then on demand of Buyer, any deposit made to Seller or Buyer shall be returned to Buyer, and this Agreement shall terminate.

41. **EQUAL OPPORTUNITY:** The Business is sold in compliance with federal, state and local anti-discrimination Laws.

42. **TERMS AND CONDITIONS OF OFFER:**
    This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Business for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

43. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

44. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    D. **"Close Of Escrow"**, including **"COE"**, means the date the grant deed, or other evidence of transfer of title, is recorded.
    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
    F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. **"Deliver", "Delivered" or "Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

45. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [ ] _____ [ ] AM/ [ ] PM, on _____ (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD) for additional terms.

Date 4/8/2018   BUYER   *Payman Bahmani*

**(Print name)** *Payman Bahmani and/or assignee*

Date _____   BUYER _____

**(Print name)** _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _____ ) ( _____ )

**BPA REVISED 11/14 (PAGE 8 OF 9)**

### BUSINESS PURCHASE AGREEMENT (BPA PAGE 8 OF 9)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Payman // Villains

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**206 N. Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*):  **NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING USE OF ESTATE PROPERTY NOT IN THE ORDINARY COURSE OF BUSINESS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __4/9/2018__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On __4/9/2018__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Dare Law, Staff Attorney
Office of the United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| __4/9/2018__ | __Joan J. Fidelson__ | __/s/ Joan J. Fidelson__ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ECF Service List:**

- **Merak E Eskigian**    meskigian@gmlawplc.net, mgoshgarian@gmlawplc.net,mnewman@gmlawplc.net
- **Amir Gamliel**    agamliel@perkinscoie.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Merdaud Jafarnia**    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- **Dare Law**    dare.law@usdoj.gov, Kenneth.g.lau@usdoj.gov,Alvin.mar@usdoj.gov,ron.maroko@usdoj.gov
- **Robert Mockler**    rmockler@mckoolsmithhennigan.com, louise-tamberg-7224@ecf.pacerpro.com,awallace@mckoolsmithhennigan.com,lmorrin@mckoolsmithhennigan.com,khom@mckoolsmithhennigan.com;sdelgado@mckoolsmithhennigan.com
- **David L. Neale**    dln@lnbyb.com
- **Kelly M Raftery**    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- **David A Tilem**    davidtilem@tilemlaw.com, DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.inforuptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Johnny White**    JWhite@wrslawyers.com, aparisi@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**

## Service List

Mark Goshgarian
23901 Calabasas Road, #2073
Calabasas, CA 91302-1542

Pierre Casanova
1336 Mohawk Street
Los Angeles, CA 90026

1629 Griffith, LLC
1923 Micheltorena Street
Los Angeles, CA 90039

GJV, Inc.
1923 Micheltorena Street
Los Angeles, CA 90039

3626 Sunset, LLC
1923 Micheltorena Street
Los Angeles, CA 90039

Bridge Tavern, LLC
1923 Micheltorena Street
Los Angeles, CA 90039

Cliff's, LLC
1923 Micheltorena Street
Los Angeles, CA 90039

GJV, Inc.
1923 Micheltorena Street
Los Angeles, CA 90039

Oh Happy Day
1923 Micheltorena Street
Los Angeles, CA 90039

Vintage Event Design, LLC
1923 Micheltorena Street
Los Angeles, CA 90039

Advance Merchant Finance
433 N Camden Dr., #810
Beverly Hills, CA 90210

Andrew Kahn/GEMS
4003 Cumberland Ave.
Los Angeles, CA 90027

Andrew Kahn/GEMS
1629 Griffith Park Blvd., #104
Los Angeles, CA 90026

Andy Given
8997 St. Ives Drive
West Hollywood, CA 90069

Anea Enterprises, Inc.
3142 Pacific Coast Hwy., #209
Torrance, CA 90505

Bank of America
P.O. Box 31785
Tampa, FL 33631

Bank of America
100 North Tryon Street
Charlotte, NC 28202

Bridge Tavern, LLC
1356 Palmetto Street
Los Angeles, CA 90013

Calif Employment Dev Dept
P.O. Box 826215
Sacramento, CA 94230-6215

Claire Downes & Brenden Gallagher
1738 N. Kingsley Dr., #4
Los Angeles, CA 90027

Commercial Bank of California
805 Wilshire Blvd.
Santa Monica, CA 90401

Coral Dabarera & Eli Edelson
3713 Kelton Ave., #3
Los Angeles, CA 90034

Courtney Wilk & Daniel Mandel
1259 Guerrero St.
San Francisco, CA 94110

Daniel Kotzer
2006 Hillsboro Ave.
Los Angeles, CA 90034

Danielle Gharst & Chris Cahill
4811 Frieda Drive
Los Angeles, CA 90065

Darla Linvill & Everett Livingston
3630 Marathon St., #326
Los Angeles, CA 90026

Dartplace Ltd/Watson
20 Seymour Road
London SW18 5JA, UK
(International Mail)

DeeAnna Staats
15301 Ventura Blvd., Suite B470
Sherman Oaks, CA 91403

EResidentAgent, Inc.
c/o Jeff Unger
12121 Wilshire Blvd., #1201
Los Angeles, CA 90025

Erin Tudron & Brad Roller
4108 Tujunga Ave., #24
Studio City, CA 91604

Frances Martin
6115 1/2 Winans Dr.
Los Angeles, CA 90068

Franchise Tax Board
P.O. Box 1673
Sacramento, CA 95812-1673

Franchise Tax Board
P.O. Box 2952
Sacramento, CA 95812

George R. Hynick
5000 N. Parkway Calabasas, #220
Calabasas, CA 91302-1400

Gideon Kotzer
9712 Monte Mar Dr.
Los Angeles, CA 90035

GJV, Inc.
1918 West Sunset Blvd.
Los Angeles, CA 90026

Glyn Aeppel
175 Rennell Drive
Southport, CT 06890

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Intnl Church Foursquare Gospel
c/o River Rock Real Estate Group
100 Bayview Circle, Suite 1200
Newport Beach, CA 92660

Jamie Stovall & Michael Ohanessian
8843 Riderwood Dr.
Sunland, CA 91040

Jeanne Kim & Keith Ahn
536 Leavenworth St.
San Francisco, CA 94109

Jill Martin & Kevin Fey
2822 St. George St.
Los Angeles, CA 90027

Jill Sanford
3333 Madera Ave.
Los Angeles, CA 90039

Jose A. Debasa
Agent for Service of Process
3424 Wilshire Blvd.,
Los Angeles, CA 90010-2202

Josh Klinghoffer
3130 Wilshire Blvd., #600
Santa Monica, CA 90403

Juckniess Law Firm
302 E. Liberty Street, #203
Ann Arbor, MI 48104

Kassia Miller & Patrick O'Brien
1343 Maltman Ave., #10
Los Angeles, CA 90026

Kay Virginia Gustafson, Esq.
28863 Eagleton St.
Agoura Hills, CA 91301

Keith Greco
Greco Decor, Inc.
2750 Casitas Ave.
Los Angeles, CA 90039

Law Office of Randy Snyder
21333 Oxnard Street, 1st Fl.
Woodland Hills, CA 91367

Lorie Margolis & Adam Rejwan
1401 Sinaloa Ave.
Pasadena, CA 91104

Los Angeles County
Treasurer & Tax Collector
P.O. Box 54018
Los Angeles, CA 90054

Mitie Tucker, LLC
1629 Griffith Park Blvd., #302
Los Angeles, CA 90026

Odyssesus Investment Group, LLC
c/o Gideon Kotzer, Manager
1333-35 Willow St.
Los Angeles, CA 90013

Olson Kundig
159 S. Jackson St., #600
Seattle, WA 98104

Paul Nibarger
7310 Via Marie Celeste
Rancho Palos Verdes, CA 90275

Presbytery of the Pacific
c/o Rev. Linda Culbertson
6323 W. 80th St.
Los Angeles, CA 90045

Rachel  Bartov Douglas
1965 Redcliff Street
Los Angeles, CA 90039

Randolph Erich Steiner
Agent for Service of Process
3424 Wilshire Blvd.
Los Angeles, CA 90010-2202

Regina Hwang & Eric Chow
940 E. 2nd St., #37
Los Angeles, CA 90012

Robins Kaplan
2049 Century Park East, #3400
Los Angeles, CA 90067

Samantha Longman & Matthew Hok
336 N. Genesee Ave.
Los Angeles, CA 90036

Select Portfolio Servicing, Inc.
P.O. Box 65450
Salt Lake City, UT 84165

Select Portfolio Servicing, Inc.
3217 S. Decker Lake Dr.
Salt Lake City, UT 84119-3284

Specialized Loan Servicing, LLC
P.O. Box 105219
Atlanta, GA 30348-5219

Specialized Loan Servicing, LLC
8742 Lucent Boulevard
Highlands Ranch, CO 80129-2386

Spring 7 Loft, LLC a/k/a BOBS, LLC
600 S. Spring St.
Unit Office
Los Angeles, CA 90014

Stanley Stone, Esq.
Agent for Service of Process
P.O. Box 261727
Encino, CA 91426

Steven Vitalos
6115 1/2 Winans Dr.
Los Angeles, CA 90068

Sue Balmforth
2658 Griffith Park Blvd., #313
Los Angeles, CA 90039

Susan Borg & Stuart Schlisserman
2081 Camino de Los Robles
Menlo Park, CA 94025

Syntax Design Lab
P.O. Box 661546
Los Angeles, CA 90066

TD Auto Finance
P.O. Box 16039
Lewiston, ME 04243

Toni Maier
8033 W. Sunset Blvd., #569
Los Angeles, CA 90046

Unkle Productions, LLC
1163 N. Cornado St
Los Angeles, CA 90026

Unkle Productions, LLC
1629 Griffith Park Blvd., #102
Los Angeles, CA 90026

Unkle Productions, LLC
1163 N. Coronado St.
Los Angeles, CA 90026

Victor Ngai & Yao Hua Wang
130 S. Hewitt St., #33
Los Angeles, CA 90012

**Returned Mail**
Antonette Venetos
14021 Marquesas Way
Marina Del Rey, CA 90292

Jena Choi & Kurt Goodwin
1401 23rd St.
Los Angeles, CA 90066