1   David A. Tilem (Bar No. 103825)
    LAW OFFICES OF DAVID A. TILEM
2   206 N. Jackson Street, Suite 201
    Glendale, California 91206
3   Tel: 888-257-7648 * 818-507-6000
        Fax: 818-507-6800
4   Email: DavidTilem@TilemLaw.com

5   Attorneys for Debtor and Debtor-
        in-Possession
6
    Alan G. Tippie (CA State Bar No. 89587)
7       atippie@sulmeyerlaw.com
    Mark S. Horoupian (CA Bar No. 175373)
8       mhoroupian@sulmeyerlaw.com
    Steven F. Werth (CA State Bar No. 205434)
9       swerth@sulmeyerlaw.com
    **Sulmeyer**Kupetz
10  A Professional Corporation
    333 South Grand Avenue, Suite 3400
11  Los Angeles, California  90071
    Telephone: 213.626.2311
12  Facsimile: 213.629.4520

13  Attorneys for Dean G. Rallis Jr., Agent

14

15                  **UNITED STATES BANKRUPTCY COURT**

16                  **CENTRAL DISTRICT OF CALIFORNIA**

17                       **LOS ANGELES DIVISION**

18

19

20
    In re:                          )  **Case No. 2:18-bk-12429-NB**
21                                   )
                                     )  Chapter 11
22                                   )
                                     )  **MOTION FOR ORDER APPROVING**
23                                   )  **COMPROMISE OF CONTROVERSY (FRBP**
                                     )  **RULE 9019); POINTS AND**
24  DANA HOLLISTER,                  )  **AUTHORITIES AND DECLARATION OF**
                                     )  **DANA HOLLISTER**
25                                   )
                                     )  <u>Hearing</u>
26                                   )  Date: TO BE SET BY COURT
                                     )  Time:
27                                   )  Place: Courtroom 1545
            Debtor.                  )       255 E. Temple St.
28  _____)       Los Angeles, CA 90012

**TO THE HONORABLE NEIL R. BASON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND OTHER INTERESTED PARTIES:**

DANA HOLLISTER, Debtor and Debtor-in-Possession ("Debtor") and DEAN G. RALLIS, JR., as Debtor's Agent ("Agent", together with Debtor, "Movants"), hereby move for an Order under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP") authorizing Debtor to enter into a settlement (the "Settlement") with Dartplace, Limited, a company formed in the United Kingdom ("Dartplace"), and approving the terms and conditions of the proposed settlement.

This motion is made on short notice.  Movants having filed a separate Application asking for a hearing on this motion for July 2, 2019 at 2:00 p.m.  This is the same date and time at which the Court will consider Movants' previously calendared motion (Dkt. #860) seeking approval for a transaction involving Debtor's leasehold interest in real property located at 1629 Griffith Park Blvd., Los Angeles (the "Sale and Assignment Motion").  The two transactions are related, as set forth below, because the Settlement resolves a potential objection to the Sale and Assignment Motion by Dartplace.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  If the Court grants the Application and sets this Motion for

2  hearing, interested parties will be given further notice of the

3  specific date and time of the hearing as well as the due date for

4  any opposition.

5  Dated: June 21, 2019                    LAW OFFICES OF DAVID A. TILEM

6

7                                          By: _____
                                               David A. Tilem,
8                                              Attorneys For Debtor

9                                          **Sulmeyer**Kupetz
                                           A Professional Corporation
10

11                                         By: _____
                                               Alan G. Tippie
12                                             Mark S. Horoupian,
                                               Attorneys for Agent
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    JURISDICTION.. . . . . . . . . . . . . . . . . . . . . . .    4

II.   LEGAL BASIS FOR MOTION    4

III.  INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . .    4

      A.    BACKGROUND FACTS. . . . . . . . . . . . . . . . . . .    4

      B.    THE AGREEMENT.. . . . . . . . . . . . . . . . . . . .    7

IV.   ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . .    8

      A. The Agreement Should Be Approved. . . . . . . . . . . .    **8**

            1.    The Probability of Success is Uncertain. . . . . .    9

            2.    Impediments to Collection. . . . . . . . . . . .    9

            3.    Litigation Would be Expensive and Inconvenient.. .    9

            4.    It is in the Best Interests of Creditors to Settle
                  this Case. . . . . . . . . . . . . . . . . . . .    10

V.    CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . .    10

DECLARATION OF DANA HOLLISTER.. . . . . . . . . . . . . . . . .    12

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

**<u>Cases</u>**                                                                                                 **<u>Pages</u>**

3

In re A&C Properties,
784 F.2d 1377, 1381 (9th Cir. 1986).. . . . . . . . . . . . . . .  8

4

In re General Store of Beverly Hills,
5   11 B. R. 539 (9th Cir. BAP 1981). . . . . . . . . . . . . . .  8

6

7

**<u>Statutes</u>**                                                                                            **<u>Pages</u>**

8   28 U.S.C. §157. . . . . . . . . . . . . . . . . . . . . . . . . .  4

9   28 U.S.C. §157(b)(2). . . . . . . . . . . . . . . . . . . . . .  4

10   28 U.S.C. §1334.. . . . . . . . . . . . . . . . . . . . . . . .  4

11   28 U.S.C. §1408.. . . . . . . . . . . . . . . . . . . . . . . .  4

12   28 U.S.C. §1409.. . . . . . . . . . . . . . . . . . . . . . . .  4

13

14

**<u>Rules</u>**                                                                                               **<u>Pages</u>**

15   FRBP 9019.. . . . . . . . . . . . . . . . . . . . . . . . . . .  4

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334 and 157.  This is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408, 1409.

## II.

## LEGAL BASIS FOR MOTION

This motion seeks relief under FRBP 9019.  The Court is asked to approve the terms of a proposed settlement (the "Settlement") with Dartplace and to authorize Debtor to enter into the Settlement.  Movants submit that the proposed settlement is appropriate and in the best interests of the Estate.  The Settlement is memorialized by a written settlement agreement, a copy of which is attached to Debtor's Declaration as Exhibit 1.

## III.

## INTRODUCTION

A.    BACKGROUND FACTS

1.    On March 1, 2011, an entity known as Presbytery of the Pacific ("LL") entered into a lease (the "Lease") with an entity known as 1629 Griffith, LLC ("1629 LLC") for certain real property located at 1629 Griffith Park Blvd., Los Angeles and 1604 Edgecliffe Drive, Los Angeles (the "Property").

2.    The Lease was amended from time to time, most recently on May 14, 2017 when LL and 1629 LLC entered into an Amended and Restated Lease (the "Amended Lease").

3.    Debtor is now, and at all times relevant was, the sole Member of 1629 LLC.

4.    The rights of 1629 LLC under the Amended Lease were assigned to Debtor between the dates of March 2, 2018 and March 14, 2018 pursuant to an instrument entitled "Assignment and Assumption of Lease" ("Lease Assignment"), a true and correct copy of which is attached as Exhibit 2.  This is significant because Debtor filed her Chapter 11 petition on March 6, 2018 (the "Petition Date").  As set forth in Debtor's Declaration submitted herewith, she does recall being asked to execute the Lease Assignment prior to the Petition Date.  She also recalls receiving, for purposes of execution, a copy of the Lease Assignment prior to the Petition Date.  While she believes that it was signed prior to the Petition Date, she cannot recall or state with certainty whether, in the rush of preparing her bankruptcy petition and the related documents, this is the case.  The executed copy of the Lease Assignment is dated "as of the 2nd day of March, 2018".  To make matters even more confusing, there was a scrivener's error which resulted in Debtor having also previously signed another copy of the Lease Assignment dated "as of the 2nd day of June, 2016".  A true and correct copy of this document is attached as Exhibit 3.

5.    At various times between June 1, 2015 and May 17, 2017, 1629 LLC borrowed $800,000 from Dartplace pursuant to several iterations of a written promissory note.  The promissory note was amended as additional funds were advanced by Dartplace.  The original loan amount was $500,000.  A true and correct copy of the original promissory note is attached as Exhibit 4.  The final loan amount was $800,000.  A true and correct copy of the most recent version, entitled "Second Amended and Restated Promissory Note" dated May 15, 2017 (the "Note"), is attached as Exhibit 5.  The

recitals in the Note accurately reflect the history of the loan.

6.   On February 7, 2018, a UCC Financing Statement in favor of Dartplace Limited was recorded with the California Secretary of State as document number 18-7632522309.  The collateral is described as:

> "All of debtors interest in the lease 1629 Griffith Park
> Bl. & 1604 Edgecliffe Drive, Los Angeles, CA and all
> permits, licenses, applications and other rights pertain
> to the use such property" [Sic]

A true and correct copy of the Financing Statement is attached as Exhibit 6.

7.   Dartplace contends either that it held (and still holds) a perfected security interest in the leasehold interest in the Property or, alternatively, that the assignment of the Lease was an avoidable transfer under applicable California law which entitles Dartplace to avoid the Lease Assignment and impose a constructive trust on the leasehold interest.  Dartplace further contends that, together with interest and attorney fees, it is now owed approximately $970,000.

8.   For their part, Movants contend that the documents do not establish that Dartplace had a lien on the leasehold and further that, at best, an avoidable transfer would entitle Dartplace to a general unsecured claim against the Estate - no different than the claim it otherwise has pursuant to Debtor's personal guaranty. Accordingly, Movants contend that Dartplace has a general unsecured claim in the amount of $833,000 (as scheduled).

9.   The positions of Dartplace and Movants are further complicated by the uncertainty of precisely when the Lease

1    Assignment was signed.

2        10.   The dispute between Dartplace and Movants is particularly

3    acute because the Estate's leasehold interest in the Property is

4    the subject of the Sale and Assignment Motion ("Dkt. 860").

5        11.   As recited in the Sale and Assignment Motion, that

6    transaction, if consummated, would generate gross selling proceeds

7    in excess of $4 million.

8        12.   The Court may further recall that, pursuant to the Term

9    Sheet (Dkt. #547) which was approved in an Order entered August 7,

10   2018 (Dkt. #557), the Estate's leasehold interest in the Property

11   is an "Agent Asset".   Further, the Term Sheet and the Court's Order

12   of August 7, 2018 require that payments which total $2 million are

13   due to be paid with $1 million to establish a reserve for unsecured

14   creditors and $1 million to be paid to the "Judgment Creditors" on

15   or before July 25, 2019.

16   B.   THE AGREEMENT

17       13.   Following negotiations, Dartplace and Movants, by and

18   through their respective counsel, have reached an agreement

19   regarding the treatment and payment of the Dartplace claim.   The

20   settlement is memorialized in the form of a written and fully

21   executed settlement agreement, a copy of which is attached to

22   Debtor's Declaration submitted herewith.

23       14.   Subject to the terms of the agreement itself, the key

24   terms are summarized as follows:

25       a.   Dartplace will reduce its claim from $970,000 to

26       $775,000;

27       b.   The Dartplace claim will be paid in full from

28       proceeds of sale of the leasehold interest in the Property.

1            c.    The settlement agreement includes mutual general

2    releases.

3        15.    While all parties have retained their rights, the

4    proposed settlement has received preliminary support from both the

5    Committee of Unsecured Creditors and the Judgment Creditors.

6    **IV.**

7    **ARGUMENT**

8    A. The Agreement Should Be Approved

9        The focus of inquiry in reviewing and approving a compromise

10    is whether the settlement is reasonable under the particular

11    circumstances of the case.    See, *In re General Store of Beverly*

12    *Hills*, 11 B. R. 539 (9th Cir. BAP 1981).    Among the factors to be

13    considered in determining whether a Settlement is fair, equitable

14    and reasonable are the following:

15            (a)    the probability of success in the litigation;

16            (b)    any impediments to collection;

17            (c)    the complexity, expense, inconvenience and delay of

18    litigation; and,

19            (d)    the interest of creditors with deference to their

20    reasonable opinions.

21    See, In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986).

22    From an analysis of the foregoing factors, the Court should

23    conclude that the proposed settlement is fair, equitable and

24    reasonable.

25        By this settlement, Dartplace and the Estate effectively and

26    efficiently resolve all issues concerning the Dartplace claim

27    without the need for any further proceedings either by way of

28    contested matter or adversary proceeding.

**1. The Probability of Success is Uncertain.**

But for the Settlement, Movants and Dartplace (the "Parties") would need to resolve a number of issues including the key factual question of when the Lease Assignment was signed.  Other issues concern the relevance of Debtor's intent to execute the Lease Assignment prior to the Petition Date, the timing and relevance of the scrivener's error, whether Dartplace had a perfected lien and, if not, the impact of an avoidable transfer action against the Estate.

Given all of these open issues, it is fair to say that neither Movants nor Dartplace could be certain of its prospects in litigation.

**2. Impediments to Collection.**

With a proposed sale of the leasehold interest in the Property pending for an amount sufficient to satisfy Debtor's short-term obligations under the Term Sheet AND pay the proposed settlement amount to Dartplace, there are no impediments and this factor is not relevant.

**3. Litigation Would be Expensive and Inconvenient.**

As noted above, the Parties need to resolve factual issues as well as a few novel legal issues.  The proposed settlement eliminates the need for such litigation expense.

Further, the time needed to resolve the litigation would be most "inconvenient" in light of the deadlines imposed on Debtor under the Term Sheet.

Depending on the outcome, the Estate might be liable for not only the full loan amount of $970,000, but also additional interest and what would become hundreds of thousands of dollars in legal

fees incurred by the Estate and, in the worst case, those also incurred by Dartplace as provided under the Note.

**4. It is in the Best Interests of Creditors to Settle this Case.**

Given the nature and facts of this case, the proposed settlement is clearly in the best interests of creditors. Debtor does not dispute the amount of the Dartplace claim - hence there would be no objection to the scheduled claim of $833,000.

Further, Debtor believes that, if she is permitted to reorganize, the estate is solvent and she anticipates that creditors will be paid in full. Thus the question becomes whether to pay $775,000 now, or $833,000 plus interest and possible attorney fees later.

In her judgment and in the judgment of the Agent, the Settlement is in the best interests of creditors because it cuts off further litigation expense, eliminates an objection to a critical transaction and, not insignificantly, save the Estate approximately $200,000. Debtor's assessment is supported by at least a preliminary indication from the Creditors Committee and the Judgment Creditors, each of whom has been briefed on the nature of the dispute and the proposed settlement, that they do not oppose the proposed Settlement.

**V.**

**CONCLUSION**

After considering all relevant factors, the Movants believe that the proposed settlement is fair, reasonable and in the best interests of the estate and all other interested parties. Movants respectfully request that this motion be granted.

**WHEREFORE**, Debtor seeks Orders:

1.   Granting this motion;

2.   Approving the terms of the proposed settlement agreement;

3.   Authorizing Debtor to enter into the proposed settlement agreement and comply with its terms; and

4.   Providing for such additional and further relief as the Court deems appropriate under the circumstances.

Dated: June 21, 2019

LAW OFFICES OF DAVID A. TILEM

By: _____
    David A. Tilem,
    Attorneys For Debtor

**Sulmeyer**Kupetz
A Professional Corporation

By: _____
    Alan G. Tippie
    Mark S. Horoupian,
    Attorneys for Agent

1

## __DECLARATION OF DANA HOLLISTER__

2  I, Dana Hollister, declare as follows:

3      1.    This statement is based on my personal knowledge. If

4  asked to do so, I could and would testify to the following

5  statements.

6      2.    I am the debtor and debtor-in-possession in this case.

7      3.    This case was filed on March 6, 2018 (the "Petition

8  Date").

9      4.    On March 1, 2011, an entity known as Presbytery of the

10  Pacific ("LL") entered into a lease (the "Lease") with an entity

11  known as 1629 Griffith, LLC ("1629 LLC") for certain real property

12  located at 1629 Griffith Park Blvd., Los Angeles and 1604

13  Edgecliffe Drive, Los Angeles (the "Property").

14      5.    The Lease was amended from time to time, most recently on

15  May 14, 2017 when LL and 1629 LLC entered into an Amended and

16  Restated Lease (the "Amended Lease").

17      6.    I am now, and at all times relevant have been, the sole

18  Member of 1629 LLC.

19      7.    The rights of 1629 LLC under the Amended Lease were

20  assigned to me between the dates of March 2, 2018 and March 14,

21  2018 pursuant to an instrument entitled "Assignment and Assumption

22  of Lease" ("Lease Assignment").  A true and correct copy of this

23  document is attached as Exhibit 2.

24      8.    The precise date of the Lease Assignment is significant

25  because of the March 6, 2018 Petition Date.

26      9.    I recall being asked to execute the Lease Assignment

27  prior to the Petition Date.  I also recall receiving, for purposes

28  of execution, a copy of the Lease Assignment prior to the Petition

Date.

10.   While I believe that it was signed prior to the Petition Date, I cannot recall or state with certainty whether, in the rush of preparing her bankruptcy petition and the related documents, this is the case.

11.   The executed copy of the Lease Assignment is dated "as of the 2nd day of March, 2018" but to make matters even more confusing, there was a scrivener's error which resulted in my having also previously signed another copy of the Lease Assignment dated "as of the 2nd day of June, 2016". A true and correct copy of this document is attached as Exhibit 3.

12.   At various times between June 1, 2015 and May 17, 2017, 1629 LLC borrowed and received $800,000 from Dartplace pursuant to several iterations of a written promissory note. The promissory note was amended as additional funds were advanced by Dartplace. Copies of promissory notes for $500,000 and $800,000 are attached as Exhibits 4 and 5. I believe there was yet another iteration between the dates of Exhibits 4 and 5 in the amount of $750,000, but I cannot find a copy.

13.   I personally guaranteed the most the note for $800,000.

14.   On February 7, 2018, a UCC Financing Statement in favor of Dartplace Limited was recorded with the California Secretary of State as document number 18-7632522309. A true and correct copy of this document is attached as Exhibit 6.

15.   I do not dispute that the principal amount of $800,000 is owed to Dartplace.

16.   The rights of Dartplace and the dispute which now exists is particularly problematic because the Agent and I have filed a

1 motion to sell the Estate's leasehold interest in the Property (the

2 "Sale and Assignment Motion")("Dkt. 860") which is set for hearing

3 on July 2, 2019 at 2:00 p.m.

4     17.  As is recited in the Sale and Assignment Motion, that

5 transaction, if consummated, would generate gross selling proceeds

6 in excess of $4 million.

7     18.  I am also bound by a settlement called the Term Sheet

8 (Dkt. #547) which was approved by the Court in an Order entered

9 August 7, 2018 (Dkt. #557).

10     19.  The Estate's leasehold interest in the Property is an

11 "Agent Asset".  Further, the Term Sheet and the Court's Order of

12 August 7, 2018 require me and my estate to pay $1 million to

13 establish a reserve for unsecured creditors and $1 million to be

14 paid to the "Judgment Creditors" on or before July 25, 2019.

15     20.  The proposed settlement allows me to meet my obligations

16 to pay $2 million under the Term Sheet, and also satisfy the

17 Dartplace claim for $775,000.  A copy of the fully executed

18 settlement agreement with Dartplace is attached as Exhibit 1.

19     I declare, under penalty of perjury under the laws of the

20 United States, that these statements are true and correct. This

21 statement was signed on June 21, 2019 at Los Angeles, California.

22

23                                        Dana Hollister

24

25

26

27

28

**"EXHIBIT 1"**

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into as of the date last executed below, by and between: (a) Dana Hollister, on her on behalf and on behalf of her bankruptcy estate (the "Bankruptcy Estate") in the Bankruptcy Case, as defined below, ("Hollister") and Dean G. Rallis Jr., in his capacity Court-appointed agent of the Debtor for the purposes set out in the order of the Bankruptcy Court in the Bankruptcy Case entered July 25, 2018 (Docket No. 528)(the "Agent and, together with Hollister, the "Estate Parties"), and (b) Dartplace Limited ("Dartplace") and Michael Watson ("Watson" and, together with Dartplace, the "Dartplace Parties").[1]

## RECITALS

A.    Hollister is the debtor-in-possession in the chapter 11 case pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") as Case No. 2:18-bk-12429-NB (the "Bankruptcy Case"). Agent is acting as the Sale Agent in the Bankruptcy Case, as authorized by the Bankruptcy Court.

B.    Dartplace holds a promissory note of $800,000 in principal amount (the "Note") against 1629 Griffith, LLC ("1629 Griffith"), of which Hollister is the sole member, and asserts a claim against Hollister as guarantor of the Note. Dartplace asserts that the amount of its claim, including accrued unpaid interest and attorneys' fees, as provided for under the Note, presently approximates $967,000 (the "Dartplace Claim").

C.    The Dartplace Parties contend that the Note was to be secured by 1629 Griffith's sole asset, a leasehold interest that is presently the subject of the pending *Joint Motion for Entry of an Order: (A) Approving Sale, Assumption and Assignment of Debtor's Leasehold Interest and Related Rights Pursuant to 11 U.S.C. §§ 363 and 365; (B) Approving Successful Bid at the Auction as the Highest and Best Bid According to the Previously Approved Bidding Procedures; and (C) Approving Selection of Second Highest and Best Bid as the "Back Up Bidder" According to the Previously Approved Bidding Procedures*, filed June 11, 2019 as Docket No. 861 (the "Leasehold Interest" and the "Sale Motion"). The Sale Motion, filed jointly by the Estate Parties, seeks approval of a proposed sale of the Leasehold Interest (the "Sale").

D.    A dispute has arisen concerning the validity of the assignment of the Leasehold Interest by Hollister, on behalf of 1629 Griffith, to herself, its proposed sale in the Sale Motion, and its impact on the payment, nature and amount of the Dartplace Claim.

E.    The Parties desire to settle the controversy between them in order to avoid the cost, inconvenience, delays, and uncertainties involved in further legal proceedings, without any Party conceding the correctness of the position of the others.

---

[1]    The parties to the Agreement may be referred to collectively as the "Parties" or individually as a "Party".

**AGREEMENT**

NOW, THEREFORE, the Parties agree as follows:

1.  <u>Compromise and Payment of the Dartplace Claim from Sale Proceeds</u>.  The Dartplace Claim shall be paid in the amount of $775,000 (the "<u>Payment</u>"), in full and final satisfaction of all obligations under the Note, upon and subject to the closing of the Sale. The Estate Parties shall take all actions necessary to ensure that such payment is made directly from escrow, pursuant to payment instructions to be provided by Dartplace.

2.  <u>Cooperation:</u>  The Dartplace Parties shall cooperate with escrow and upon request, shall execute any reasonably necessary documents to effectuate the Parties' intent under this Agreement, including a UCC-3 termination statement.

3.  <u>Mutual General Release</u>.  Effective upon and the Dartplace Parties' receipt of  the Payment in good funds, the Dartplace Parties, on the one hand, and the Estate Parties, on the other hand, unconditionally and forever do fully and finally release, acquit, and discharge each other, and each of their estates, affiliates, parent entities, subsidiaries, predecessors, successors, assigns, officers, directors, employees, shareholders, lenders, agents, professionals, servants, representatives, attorneys, members, beneficiaries, and insurers, past, present, and future (each, a "<u>Dartplace Released Party</u>" or "<u>Estate Released Party</u>" respectively), from any and all actions, complaints, causes of action, claims (whether they be unsecured, secured, priority, and/or administrative, including crossclaims, counterclaims, rights of set-off and recoupment), promises, obligations, losses, demands, damages, expenses, fees, liens, attorney's fees or costs and any and all liabilities that any Dartplace Released Party has or had against any Estate Released Party, and that any Estate Released Party has or had against any Dartplace Released Party, of whatsoever nature and kind, whether known or unknown, now existing or hereafter arising, arising at law or in equity, relating to the subject matter of this Agreement, including without limitation, the Dartplace Claim, the Leasehold Interest, the Sale Motion or the Bankruptcy Case.  For the avoidance of doubt, the Bankruptcy Estate and 1629 Griffith are Estate Released Parties.  Nothing herein shall release any obligations of any of the Parties under this Agreement.

4.  <u>Waiver of Section 1542</u>.  The Parties recognize, acknowledge, and waive the provisions of California Civil Code Section 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASING PARTY.**

In waiving the provisions of Section 1542 of the California Civil Code, each Party acknowledges that it may discover facts in addition to or different than those which it

2

now believes to be true with respect to the matters released in this Agreement, but agree that it has taken that possibility into account in reaching this settlement, and the releases given in this Agreement shall remain in effect as a full and complete release notwithstanding the discovery or existence of such additional or different facts, as to which each Party expressly assumes the risk.

5.    Bankruptcy Court Approval.  This Agreement is subject to Bankruptcy Court approval. The Estate Parties shall take all action necessary to obtain Bankruptcy Court approval, including but not limited to, any additional notice or filings required by the Bankruptcy Code or the Bankruptcy Court.

6.    Attorneys' Fees.   In the event of any dispute between the Parties relating to the interpretation or implementation of this Agreement, the prevailing party shall be entitled to payment of reasonable attorneys' fees and costs.

7.    Successors and Assigns.  This Agreement shall be binding upon the Parties and their respective successors and assigns, including, but not limited to, any chapter 7 trustee appointed in the Bankruptcy Cases in the event that the Bankruptcy Cases are converted to cases under chapter 7 of the Bankruptcy Code.

8.    Authorizations.   Each Party represents and warrants to each other Party that it is authorized to execute this Agreement, that it has full power and authority to enter into this Agreement and effectuate the matters provided hereunder and that this Agreement is duly executed and delivered by it, and constitutes its valid, binding agreement in accordance with its terms (subject to any requirement of Bankruptcy Court approval) and that it has not transferred any claim that is the subject of this Agreement.

9.    Entire Agreement.  This Agreement contains the entire agreement among the Parties relating to the subject matter hereof and can be amended, waived or otherwise modified only by a signed writing executed by each of the Parties.

10.    Modification or Waiver.  No modification or waiver of any of the provisions of this Agreement shall be valid and enforceable unless such modification or waiver is in writing and signed by the Party to be charged and, unless otherwise stated therein, no such modification or waiver shall constitute a modification or waiver of any other provision hereof (whether or not similar) or constitute a continuing waiver.

11.    Survival.  All representations, warranties, covenants, agreements and obligations in this Agreement will survive the execution and delivery of, and the consummation of the transactions contemplated by, this Agreement.

12.    Counterparts.  This Agreement may be executed in multiple counterparts, any of which may be transmitted by electronic (e-mail) transmission, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Agreement to present any copy signed by the Parties hereto to be charged.

13.    No Admission of Liability. It is expressly understood and agreed that entry into this Agreement does not constitute an admission of liability, fault, wrongdoing, or any fact by any of the Parties.

3

14. <u>Governing Law and Jurisdiction</u>.    Any matter concerning the interpretation or enforcement of this Agreement shall be construed under the laws of the State of California (without application of principles of conflicts of law) and the Bankruptcy Code.    The Bankruptcy Court shall have exclusive jurisdiction over any disputes concerning this Agreement.

15. <u>Severability</u>.  If any term, clause or provision of this Agreement shall be judged to be invalid, the remaining provisions of this Agreement shall remain in full force and effect and will not be affected by the invalid term, clause or provision or by its severance therein, unless such continued effectiveness of this Agreement, as modified, would be contrary to the basic understanding and intentions of the parties as expressed herein.  The Parties shall endeavor in good faith negotiations to replace the invalid term, clause or provision with a valid provision, the effect of which would accomplish the intention of the Parties as closely as possible.

16. <u>Construction of Ambiguity</u>.  It is acknowledged that each of the Parties has participated in the drafting of this Agreement and any ambiguity found herein shall not be construed against any Party.

17. <u>Knowledge of Terms of Agreement</u>.  Each Party warrants and represents that in entering into this Agreement, it is relying solely upon its own judgment, belief and knowledge and, as applicable, on that of any attorney it has retained to represent it in this matter. No Party is relying on any representation or statement made by any other Party or any person representing such other Party except for the representations and warranties expressly set forth in this Agreement. By signing this Agreement, the Parties hereby confirm and state that (a) they have each carefully read this Agreement, (b) that they each know the content of this Agreement and (c) that they have each been represented by independent legal counsel in connection with the negotiation of this Agreement.

18. <u>No Third Party Beneficiaries</u>.  Nothing in this Agreement, express or implied, is intended to confer on any person or entity other than the Parties and their respective successors and assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

AGREED BY:

Dated:  June 2 1 , 2019

<br>

Dana Hollister, Debtor and Debtor in Possession

By: _____
　　　　　Dana Hollister

DOCS_LA:322778.2

Dated:  June 21, 2019

Dean G. Rallis Jr., Solely in his Capacity as
Agent

By: _____
Dean G. Rallis Jr.


Dated:  June ___, 2019

Dartplace, Limited

By: _____
Michael Watson
Title: ___Director___


Dated:  June ___, 2019

Michael Watson

By: _____
Michael Watson


*(Signature Page to Settlement Agreement)*

DOCS_LA:322778.2

**"EXHIBIT 2"**

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment") is made as of the 2nd day of March, 2018 (the "Effective Date"), by and between **1629 Griffith, LLC, a California limited liability company** ("**Assignor**"), and Dana Hollister ("**Assignee**"), with reference to the following facts:

Assignor, as "Lessee", and Presbytery of the Pacific as, "Lessor" have entered into that certain lease attached hereto as Exhibit "A" (the "Lease") entitled "Amended and Restate Lease" regarding that certain parcel of real property situated in the City of Los Angeles, County of Los Angeles, State of California commonly known as 1629 Griffith Park Bl. and 1604 Edgecliffe Drive (the "Property").

Assignor now desires to assign and transfer to Assignee all of Assignor's interest as Lessee in the Lease, subject to the terms, covenants and obligations set forth therein.

NOW THEREFORE, in consideration of the mutual covenants and conditions hereinbelow set forth, it is agreed:

1.    Effective as of the Effective Date, Assignor assigns and transfers to Assignee, all of Assignor's right, title and interest as Lessee, accruing after the Effective Date, in and to the Lease.

2.    Assignee hereby accepts the assignment of the Lease as of the Effective Date, shall be entitled to all rights and benefits accruing to the Lessee thereunder and hereby assumes all obligations thereunder and agrees to be bound by the terms of the Lease, from and after the Effective Date.

3.    The provisions of this instrument shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

4.    This Assignment may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption of Leases as of the Effective Date.

"**ASSIGNOR**"

1629 Griffith, LLC
a California limited liability company

By:_____
Dana Hollister, Manager

"**ASSIGNEE**"

_____
Dana Hollister

Page 1

**LESSEE'S ACKNOWLEDGMENT:**

In accordance with the provisions of paragraph 12.1(a)(ii) of the Lease regarding an assignment of the Lease to an "Affiliate," Lessee hereby confirms that Lessee is not released from any of its obligations under the Lease by virtue of the assignment set forth hereinabove.

1629 Griffith, LLC
a California limited liability company

By: _____
Dana Hollister, Manager

**GUARANTOR'S ACKNOWLEDGMENT:**

The undersigned, as Guarantor of the Lease, in accordance with the provisions of paragraph 12.1(a)(ii) of the Lease regarding an assignment of the Lease to an "Affiliate," hereby confirms that the undersigned is not released from any of its obligations under her guaranty of the Lease by virtue of the assignment set forth hereinabove.

_____
Dana Hollister, Manager

**EXHIBIT "A"**
**TO ASSIGNMENT AND ASSUMPTION OF LEASE**

**COPY OF THE LEASE**

**"EXHIBIT 3"**

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment") is made as of the 2nd day of June, 2016 (the "Effective Date"), by and between **1629 Griffith, LLC, a California limited liability company** ("Assignor"), and **Dana Hollister** ("Assignee"), with reference to the following facts:

Assignor, as "Lessee", and Presbytery of the Pacific as, "Lessor" have entered into that certain lease attached hereto as Exhibit "A" (the "Lease") entitled "Amended and Restate Lease" regarding that certain parcel of real property situated in the City of Los Angeles, County of Los Angeles, State of California commonly known as 1629 Griffith Park Bl. and 1604 Edgecliffe Drive (the "Property").

Assignor now desires to assign and transfer to Assignee all of Assignor's interest as Lessee in the Lease, subject to the terms, covenants and obligations set forth therein.

NOW THEREFORE, in consideration of the mutual covenants and conditions hereinbelow set forth, it is agreed:

1.    Effective as of the Effective Date, Assignor assigns and transfers to Assignee, all of Assignor's right, title and interest as Lessee, accruing after the Effective Date, in and to the Lease.

2.    Assignee hereby accepts the assignment of the Lease as of the Effective Date, shall be entitled to all rights and benefits accruing to the Lessee thereunder and hereby assumes all obligations thereunder and agrees to be bound by the terms of the Lease, from and after the Effective Date.

3.    The provisions of this instrument shall be binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

4.    This Assignment may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, Assignor and Assignee have executed this Assignment and Assumption of Leases as of the Effective Date.

"ASSIGNOR"

1629 Griffith, LLC
a California limited liability company

By: _____
Dana Hollister, Manager

"ASSIGNEE"

_____
Dana Hollister

Page 1

026

**LESSEE'S ACKNOWLEDGMENT:**

In accordance with the provisions of paragraph 12.1(a)(ii) of the Lease regarding an assignment of the Lease to an "Affiliate," Lessee hereby confirms that Lessee is not released from any of its obligations under the Lease by virtue of the assignment set forth hereinabove.

1629 Griffith, LLC
a California limited liability company

By: _____
Dana Hollister, Manager

**GUARANTOR'S ACKNOWLEDGMENT:**

The undersigned, as Guarantor of the Lease, in accordance with the provisions of paragraph 12.1(a)(ii) of the Lease regarding an assignment of the Lease to an "Affiliate," hereby confirms that the undersigned is not released from any of its obligations under her guaranty of the Lease by virtue of the assignment set forth hereinabove.

_____
Dana Hollister, Manager

**EXHIBIT "A"**
**TO ASSIGNMENT AND ASSUMPTION OF LEASE**

**COPY OF THE LEASE**

**"EXHIBIT 4"**

## PROMISSORY NOTE

$500,000.00 USD               Los Angeles, California               June ___, 2015

FOR VALUE RECEIVED, **1629 Griffith, LLC, a California limited liability company**, agrees and promises to pay to the order of **Lender** or other holder hereof may from time to time designate in writing, the principal amount of **Five Hundred Thousand and 00/100 Dollars ($500,000.00)** USD and to pay interest on the balance thereof from time to time at the rate described below.

1.      **Definitions.**

(a)      **Borrower.** The term "Borrower" as used herein shall mean **1629 Griffith LLC, a California limited liabiltiy company.**

(b)      **Interest Commencement Date.** The "Interest Commencement Date" shall be the date upon which the Loan begins to bear interest which date shall be the date Lender funds the loan.

(c)      **Lender.** The term "Lender" as used herein shall mean ~~Michael Watson and Victoria Carter, each as to an undivided 50% interest~~, and shall include said Lender and all of said Lender's heirs, successors, and assigns and shall mean the person(s) and/or entity(ies) holding the Lender's interest in this Note at any time. *DARTPLACE LIMITED, A COMPAN INCORPORATED IN THE UNITED KINGDOM, WHOSE REGISTER NO IS: 0198165*

(d)      **Maturity Date.** The term "Maturity Date" shall be **June 1, 2020**.

(e)      **Note.** The term "Note" as used herein shall mean this Promissory Note.

2.      **Funds Subject to this Note (aka the "Funds"):** Lender hereby loans to Borrower the amount of **Five Hundred Thousand and 00/100 Dollars ($500,000.00) USD**, on the terms and conditions set forth in this Note.

3.      **Interest Rate.** Eight percent (8%) per annum.

4.      **Payments.** Commencing on **December 1, 2015** and on each **June 1 and December 1** through and including **Decmber 1, 2019**, Borrower shall make interest only payments, on a semi-annual basis on the then current unpaid principal balance due hereunder. On the Maturity Date (which is **June 1, 2020**), Borrower shall pay all principal, accrued interest and any other charges or amount due under this Note.

5.      **Covenants.** Borrower covenants and agrees that:

(a)      The debt memorialized by this Note shall be the senior debt of Borrower; and

(b)      Any subsequent debt incurred by Borrower shall be junior to this Note; and

(c)      Borrower shall not terminate, surrender, assign or otherwise dispossess itself of its interest in that certain lease dated March 1, 2012 by and between Presbytery of Pacific, as Lessor, and Borrower, as Lessee, regarding the real property common referred to as 1629 Griffith Park Bl. & 1604 Edgecliffe Drive, Los Angeles, California 90026 (the "Property").

6.      **Conversion of this Note to an Interest in the Project.** Borrower is in the process of preparing a plan for the redevelopment of the Property (the "Project"). Borrower anticipates that Borrower or Borrower's affiliate will be preparing an private placement memorandum or other similar offering materials (the "PPM") and will be offering select investors the opportunity to invest in the Project. Lender shall have the right, at Lender's option, to convert this Note to an investment in the Project on the terms

— — —

INITIALS

and conditions set forth in the PPM. Such investment shall be in the amount of 125% of the amount due and owing on this Note at the time of Lender's election to convert this Note. The provisions of this paragraph 6 shall not obligate or require Borrower to prepare a PPM or accept investors for the Project. Any such conversion shall be solely at Lender's Option and Lender shall not have not an obligation to convert the amount due under this Note to an investment in the Property. Lender shall not have the conversion rights set forth in this paragraph 6 if Borrower secures a single investor or an investor group who will be investing in the Project or pursues an alternate financing strategy such that Borrower and/or Borrower's affiliate shall not be raising capital from outside investors utilizing a traditional private party offering or other similar investment strategy which involves securing funds from a group of outside investors. In the event Lender elects to convert this Note to an investment in the Project, Lender shall be required to inform Borrower of such election prior to the date that the investment period under the PPM closes.

7.    **Place of Payment.** Each payment required hereunder shall be made by wire-transfer payable to Lender and sent pursuant to separate instructions to be provided by Lender to Borrower, as Lender may designate from time to time.

8.    **Application of Payments.** Payment of monthly installments shall be applied first, to the payment of the interest then accrued and due and then to principal.

9.    **Prepayment.** Borrower can prepay this Note or any portion of the principal due and owing at any time, without penalty.

10.    **Legal Tender.** All sums due under this Note are payable at the place or places as above stated in legal tender of the United States of America current on the dates such sums or payments are respectively due. Any remittances by check or draft shall be credited on the date of receipt subject to the condition that such check or draft may be handled for collection in accordance with the practice of the collecting bank or banks and any receipt issued therefor shall be void unless the amount due is actually received by the Lender or other holder hereof.

11.    **Waiver.** Borrower hereby waives diligence, demand, presentment for payment, and notice of whatever kind or nature. Without discharging or in any way affecting the liability of the undersigned, the undersigned hereby consents to any and all extensions of this Note as Lender may in its sole discretion grant from time to time. If more than one person or entity is executing this Note then all of the obligations herein contained shall be considered the joint and several obligations of each of the undersigned.

12.    **Forebearance Not a Waiver.** If Lender should delay in exercising any of its rights under this Note or should fail to exercise any of it rights under this Note, said delay or failue to act shall not constitute a waiver by Lender of any of its rights or a waiver of any breach, default or failure or any condition under this Note. There shall be no waiver by Lender of any of its rights under this Note or a waiver for any breach, default or failure or any condition under this Note unless such waiver is expressly set forth in a writing signed by Lender.

13.    **Attorneys' Fees.** In the event that this Note is placed in the hands of an attorney at law for collection after maturity or upon default or in the event that proceedings at law or in equity are instituted in connection herewith, or in the event that this Note is placed in the hands of an attorney at law to enforce any of the rights or the agreements contained herein, Borrower shall pay all costs of collecting or attempting to collect this Note or protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees.

14.    **Legal Limits.** This Note is subject to the limitation that in no event shall interest or any other amount paid or agreed to be paid to Lender for the use, forbearance or detention of money to be advanced hereunder or pursuant to this Note exceed the highest lawful rate permissible under applicable usury laws. If fulfillment of any provision hereof shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions then _ipso facto_, the obligation to be fulfilled shall be

INITIALS

reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest.

15.    **Default.** If Borrower shall fail to make any regular installment payment of interest within ten (10) days of the date such payment is due and payable, a late charge by way of damages shall be immediately due and payable. The late charge shall not be applicable to the principal portion of the final payment due hereunder. Borrower recognizes that default by Borrower in making the payments herein agreed to be paid when due will result in Lender or other holder hereof incurring additional expense in servicing the loan, in loss to Lender or other holder hereof of the use of the money due and in frustration to the Lender or other holder hereof in meeting its loan commitments. Borrower agrees that, if for any reason Borrower fails to pay the amounts due under this Note when due, Lender or other holder hereof shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore agrees that a sum equal to ten cents ($.10) for each one dollar ($1.00) of each payment more than ten (10) days in arrears is a reasonable estimate of said damages to Lender or other holder hereof which sum Borrower agrees to pay on demand.

16.    **Acceleration.** If default be made in the payment of any part of any of the several installments of this Note when due then, after the giving of ten (10) days prior written notice from Lender to Borrower, Lender may at any time thereafter during the continuance of any such default deem the entire unpaid principal balance of this Note together with any interest accrued thereon immediately due and payable without further notice of such election and without demand or presentment, become immediately due and payable at the place of payment aforesaid and the principal balance together with any interest accrued thereon, so accelerated and declared due as aforesaid, shall thereafter bear simple interest at the Interest Rate until paid.

17.    **REFEREE.** ALL DISPUTES ARISING OUT OF OR PERTAINING TO THIS LOAN SHALL BE HEARD AND DETERMINED BY A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET SEQ. IN EFFECT AS OF THE DATE HEREOF. THE VENUE OF ANY PROCEEDING HEREUNDER SHALL BE IN LOS ANGELES COUNTY, CALIFORNIA (UNLESS CHANGED BY STIPULATION OF THE PARTIES).

(A)    THE PARTY SEEKING TO RESOLVE THE DISPUTE SHALL SERVE A COMPLAINT ON THE OTHER PARTY IN THE MANNER PRESCRIBED BY LAW AND ON COUNSEL PURSUANT TO THE NOTICE PROVISIONS HEREUNDER. WITHIN TEN (10) DAYS AFTER THE SERVICE OF THE COMPLAINT OR STATEMENT OF THE COMPLAINT OR STATEMENT OF CLAIM, THE PARTY SEEKING RELIEF SHALL MAKE A WRITTEN REQUEST FOR THE SPECIFIC DESIGNATION OF A REFEREE TO TRY THE DISPUTE. THEREAFTER THE PARTIES SHALL USE THEIR BEST EFFORTS TO AGREE UPON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE UPON A REFEREE WITHIN TEN (10) DAYS AFTER A WRITTEN REQUEST TO DO SO BY ANY PARTY, THEN ANY PARTY MAY PETITION THE PRESIDING JUDGE OF THE LOS ANGELES COUNTY SUPERIOR COURT TO APPOINT A REFEREE. THE PRESIDING JUDGE SHALL HAVE THE POWER TO ASSIGN SAID REQUEST TO SUCH JUDGE OF THE SUPERIOR COURT AS THE PRESIDING JUDGE DEEMS APPROPRIATE. FOR THE GUIDANCE OF THE JUDGE MAKING THE APPOINTMENT OF SAID REFEREE, THE PARTIES AGREE THAT THE PERSON SO APPOINTED SHALL BE A RETIRED JUDGE.

(B)    THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE, SECTIONS 640, 641, 642, 643, 644, 645 AND 645.1, SHALL BE APPLICABLE TO DISPUTE RESOLUTION BY A REFEREE HEREUNDER. IN AN EFFORT TO CLARIFY AND AMPLIFY THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 644 AND 645, THE PARTIES AGREE THAT THE REFEREE SHALL DECIDE THE DISPUTE SUBMITTED BY THE PARTIES FOR DECISION IN THE SAME MANNER AS REQUIRED FOR A TRIAL BY COURT AS SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE, SECTIONS 631.8 AND 632, AND CALIFORNIA RULES OF COURT, RULE 232. THE REFEREE SHALL TRY AND DECIDE THE DISPUTE ACCORDING TO AND BASED ON ALL OF THE SUBSTANTIVE AND PROCEDURAL

INITIALS

STATUTORY AND DECISIONAL LAW OF THE STATE OF CALIFORNIA, UNLESS THE PARTIES STIPULATE TO THE CONTRARY. WHEN THE REFEREE HAS DECIDED THE DISPUTE, THE REFEREE SHALL ALSO CAUSE THE PREPARATION OF A JUDGMENT BASED ON SAID DECISION. THE JUDGMENT TO BE ENTERED BY THE SUPERIOR COURT, BASED UPON THE DECISION OF THE REFEREE, SHALL BE APPEALABLE IN THE SAME MANNER AS IF THE JUDGE SIGNING THE JUDGMENT HAD TRIED THE CASE.

(C) THE PARTIES SHALL DILIGENTLY COOPERATE WITH ONE ANOTHER AND THE PERSONS(S) APPOINTED TO RESOLVE THE DISPUTE, AND SHALL PERFORM SUCH ACTS AS MAY BE NECESSARY TO OBTAIN A PROMPT AND EXPEDITIOUS RESOLUTION OF THE DISPUTE. IF EITHER PARTY REFUSES TO DILIGENTLY COOPERATE, AND THE OTHER PARTY, AFTER FIRST GIVING NOTICE OF ITS INTENT TO RELY ON THE PROVISIONS OF THIS SECTION 15.17, INCURS ADDITIONAL EXPENSES OR ATTORNEYS' FEES SOLELY AS A RESULT OF SUCH FAILURE TO DILIGENTLY COOPERATE, THE REFEREE MAY AWARD SUCH ADDITIONAL EXPENSES AND ATTORNEYS' FEES TO THE PARTY GIVING SUCH NOTICE, EVEN IF SUCH PARTY IS NOT THE PREVAILING PARTY IN THE DISPUTE.

(D) THE COST OF THE PROCEEDING SHALL INITIALLY BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, BUT THE PREVAILING PARTY IN SUCH PROCEEDINGS SHALL BE ENTITLED TO RECOVER, IN ADDITION TO REASONABLE ATTORNEYS' FEES AND ALL OTHER COSTS, ITS CONTRIBUTION FOR THE REASONABLE COST OF THE REFEREE AS AN ITEM OF RECOVERABLE COSTS. IF EITHER PARTY REFUSES TO PAY ITS SHARE OF THE COSTS OF THE PROCEEDING, AT THE TIME(S) REQUIRED, THE OTHER PARTY MAY DO SO, IN WHICH EVENT THAT PARTY WILL BE ENTITLED TO RECOVER (OR OFFSET) THE AMOUNT ADVANCED, WITH INTEREST, EVEN IF THAT PARTY IS NOT THE PREVAILING PARTY. THE REFEREE SHALL INCLUDE SUCH COSTS IN HIS JUDGMENT OR AWARD.

(E) The following matters are excluded from Reference Proceedings hereunder: (i) Any matter which is within the jurisdiction of a probate, small claims, or bankruptcy court; and (ii) An action for bodily injury or wrongful death, or for latent or patent defects to which Code of Civil Procedure §337.1 or §337.15 applies. The filing of a court action to (w) enforce the provisions of this paragraph 17, regarding submission of disputes to a reference, (x) to enable the recording of a notice of pending action, (y) for order of attachment, receivership, injunction, or (z) other provisional remedies, shall not constitute a violation of these provisions of this Note.

— —— —
Initials

18. **WAIVER OF JURY.** WITH RESPECT TO ANY DISPUTE ARISING UNDER OR IN CONNECTION WITH THIS NOTE, AND TO THE EXTENT PERMISSIBLE AT LAW, EACH PARTY TO THIS NOTE HEREBY IRREVOCABLY WAIVES ALL RIGHTS IT MAY HAVE TO DEMAND A JURY TRIAL. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE PARTIES AND EACH PARTY ACKNOWLEDGES THAT NONE OF THE OTHER MEMBER NOR ANY PERSON ACTING ON BEHALF OF THE OTHER PARTY HAS MADE ANY REPRESENTATION OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE PARTIES EACH FURTHER ACKNOWLEDGE THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THE PARTIES EACH FURTHER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

— —— —
Initials

— —— —
INITIALS

19.    **Choice of Law.**  This Note shall be governed by the laws of the State of California, except to the extent that Federal laws may preempt the laws of the State of California.

20.    **Modification.**  This Note may be altered, amended, or repealed only by a writing signed by all of the Members.

21.    **Entire Agreement.**  This Note contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto.  This Note may not be modified, changed, supplemented or terminated, nor may any obligations or rights hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein.  Other than as expressly set forth in this Note, the parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto.

22.    **Severability.**  If any provision of this Note is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Note shall remain in effect.

**BORROWER:**

**1629 Griffith, LLC
a California limited liability company**

Dated:_____          By:_____
                                  **Dana Hollister**

**LENDER:**

                                  DARTPLACE LIMITED
Dated:_____          _____
                                  **Michael Watson**

Dated:_____          ~~_____
                                  Victoria Carter~~

*(Remainder of Page Intentionally Blank)*

Page 5 of 5

_____  _____  _____
INITIALS

034

**"EXHIBIT 5"**

## SECOND AMENDED AND RESTATED PROMISSORY NOTE

7 

$800,000.00 USD                    Los Angeles, California                    May 15, 2016

FOR VALUE RECEIVED, **1629 Griffith, LLC, a California limited liability company**, agrees and promises to pay to the order of **Lender** or other holder hereof may from time to time designate in writing, the principal amount of **Eight Hundred Thousand and 00/100 Dollars ($800,000.00) USD** and to pay interest on the balance thereof from time to time at the rate described below.

### RECITALS

A.    On or about June 24, 2015, Lender (as defined in paragraph 1(c) below), loaned to Borrower (as defined in paragraph 1(a) below) the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) USD, which loan was memorialized by a Promissory Note dated June 24, 2015.

B.    On or about May 22, 2016, Lender loaned to Borrower an additional Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) USD and Lender agreed to loan said amount to Borrower on the terms and conditions set forth in the Amended and Restated Promissory Note dated May 22, 2016.

C.    Borrower desires to borrow an additional Fifty Thousand and 00/100 Dollars ($50,000.00) USD and Lender has agreed to loan said amount to Borrower on the terms and conditions set forth in this Second Amended and Restated Promissory Note dated May 15, 2017.

### AGREEMENT

1.    **Definitions.**

(a)    **Borrower.** The term "Borrower" as used herein shall mean **1629 Griffith LLC, a California limited liability company.**

(b)    **Interest Commencement Date.** The "Interest Commencement Date" shall be the date upon which the Loan begins to bear interest which date shall be the date Lender funds the loan.

(c)    **Lender.** The term "Lender" as used herein shall mean **Dartplace Limited, a company incorporated in the United Kingdom** whose registration number is 0198165, and shall include said Lender and all of said Lender's heirs, successors, and assigns and shall mean the person(s) and/or entity(ies) holding the Lender's interest in this Second Amended Note at any time.

(d)    **Maturity Date.** The term "Maturity Date" shall be **June 1, 2020.**

(e)    **Original Note.** The term "Original Note" as used herein shall mean that certain Promissory Note dated June 24, 2015, memorializing the original loan from Lender to Borrower in the amount of Five Hundred Thousand and 00/100 Dollars ($500,000.00) USD

(f)    **Amended Note.** The term "Amended Note" as used herein shall mean the Amended and Restated Promissory Note dated May 22, 2016.

(g)    **Second Amended Note.** The term "Second Amended Note" as used herein shall mean this Second Amended and Restated Promissory Note dated May 15, 2017.

2.    **Funds Subject to this Second Amended Note (aka the "Funds"):** Lender hereby loans to Borrower the amount of **Eight Hundred Thousand and 00/100 Dollars ($800,000.00) USD**, on

1

the terms and conditions set forth in this Second Amended Note, which amount is comprised of Five Hundred Thousand and 00/100 Dollars ($500,000.00) USD, as set forth in the Original Note plus an additional Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) USD, as set forth in the Amended Note plus an additional Fifty Thousand and 00/100 Dollars ($50,000.00) USD as set forth in this Second Amended Note.

3.    **Interest Rate.** Eight percent (8%) per annum

4.    **Payments.**

(a)    The first payment on the Original Note was made on **December 1, 2015,** receipt of which is acknowledged by Lender.

(b)    A payment was made on or about **June 1, 2016,** in the amount of Twenty Thousand Four Hundred Ninety Three and 15/100 ($20,493.15) where Borrower paid to Lender all accrued interest on the original Five Hundred Thousand and 00/100 Dollars ($500,000.00) USD between December 1, 2015 and May 30, 2016 *plus* the interest on the additional Two Hundred Fifty Thousand and 00/100 Dollars ($250,000.00) commencing as of the date of the funding of said amount through May 30, 2016, receipt of which is acknowledged by Lender.

(c)    An interest only payment on the current unpaid principal balance of Seven Hundred and Fifty Thousand and 00/100 Dollars ($750,000.00) was made on or around December 1, 2016 in the amount of Thirty-Three Thousand 00/100 Dollars ($33,000.00), receipt of which is acknowledged by Lender.

(d)    On July 1, 2017, Borrower shall make a unique one-time payment of Thirty-Five Thousand Five Hundred and 00/100 Dollars ($35,500.00) to Lender. This Payment includes seven months of interest on the Seven Hundred and Fifty Thousand and 00/100 Dollar ($750,000.00) Amended Note plus a payment of Five Hundred and 00/100 Dollars ($500.00) for one month of interest on the Fifty Thousand and 00/100 Dollars ($50,000.00) included in this Second Amended Note. Thereafter on January 1, 2018, an interest only payment of Thirty-Two Thousand and 00/100 Dollars ($32,000.00) on the entire loan amount of Eight Hundred Thousand and 00/100 Dollars ($800,000.00) shall be due. Then, borrower shall make interest only payments on the then current unpaid principle balance due hereunder on January 1 and July 1 of each subsequent calendar year as agreed. On the Maturity Date (which is June 1, 2020), Borrower shall pay all principal, accrued interest and any other charges or amount due under this Second Amended Note.

5.    **Covenants.** Borrower covenants and agrees that:

(a)    The debt memorialized by this Second Amended Note shall be the senior debt of Borrower;
and

(b)    Any subsequent debt incurred by Borrower shall be junior to this Second Amended Note;
and

(c)    Borrower shall not terminate, surrender, assign or otherwise dispossess itself of its interest in that certain lease dated March 1, 2012 by and between Presbytery of Pacific, as Lessor, and Borrower, as Lessee, regarding the real property common referred to as 1629 Griffith Park Bl. & 1604 Edgecliffe Drive, Los Angeles, California 90026 (the "Property").

6.    **Conversion of this Second Amended Note to an Interest in the Project.** Borrower is in the process of preparing a plan for the redevelopment of the Property (the "Project"). Borrower anticipates that Borrower or Borrower's affiliate will be preparing a private placement memorandum or

2

 

other similar offering materials (the "PPM") and will be offering select investors the opportunity to invest in the Project. Lender shall have the right, at Lender's option, to convert the Funds, as reflected in this Second Amended Note (aka the "Loan") to an investment in the Project on the terms and conditions set forth in the PPM. Such investment shall be in the amount of 125% of the amount due and owing on this Second Amended Note at the time of Lender's election to convert the Loan to investment in the Project. The provisions of this paragraph 6 shall not obligate or require Borrower to prepare a PPM or accept investors for the Project. Lender's conversion rights, as provided for in this paragraph 6, may be exercised in Lender's sole and absolute discretion and Lender shall not have not an obligation to convert the amount due under this Second Amended Note to an investment in the Property. Lender shall not have the conversion rights set forth in this paragraph 6 if Borrower secures a single investor or an investor group who will be investing in the Project or pursues an alternate financing strategy such that Borrower and/or Borrower's affiliate shall not be raising capital from outside investors utilizing a traditional private party offering or other similar investment strategy which involves securing funds from a group of outside investors. In the event Lender elects to convert this Second Amended Note to an investment in the Project, Lender shall be required to inform Borrower of such election prior to the date that the investment period under the PPM closes.

7.    **Place of Payment.** Each payment required hereunder shall be made by wire-transfer payable to Lender and sent pursuant to separate instructions to be provided by Lender to Borrower, as Lender may designate from time to time.

8.    **Application of Payments.** Payment of monthly installments shall be applied first, to the payment of the interest then accrued and due and then to principal.

9.    **Prepayment.** Borrower can prepay this Second Amended Note or any portion of the principal due and owing at any time, without penalty.

10.    **Legal Tender.** All sums due under this Second Amended Note are payable at the place or places as above stated in legal tender of the United States of America current on the dates such sums or payments are respectively due. Any remittances by check or draft shall be credited on the date of receipt subject to the condition that such check or draft may be handled for collection in accordance with the practice of the collecting bank or banks and any receipt issued therefor shall be void unless the amount due is actually received by the Lender or other holder hereof.

11.    **Waiver.** Borrower hereby waives diligence, demand, presentment for payment, and notice of whatever kind or nature. Without discharging or in any way affecting the liability of the undersigned, the undersigned hereby consents to any and all extensions of this Second Amended Note as Lender may in its sole discretion grant from time to time. If more than one person or entity is executing this Second Amended Note then all of the obligations herein contained shall be considered the joint and several obligations of each of the undersigned.

12.    **Forebearance Not a Waiver.** If Lender should delay in exercising any of its rights under this Second Amended Note or should fail to exercise any of its rights under this Second Amended Note, said delay or failure to act shall not constitute a waiver by Lender of any of its rights or a waiver of any breach, default or failure or any condition under this Second Amended Note. There shall be no waiver by Lender of any of its rights under this Second Amended Note or a waiver for any breach, default or failure or any condition under this Second Amended Note unless such waiver is expressly set forth in a writing signed by Lender.

13.    **Attorneys' Fees.** In the event that this Second Amended Note is placed in the hands of an attorney at law for collection after maturity or upon default or in the event that proceedings at law or in equity are instituted in connection herewith, or in the event that this Second Amended Note is placed in the hands of an attorney at law to enforce any of the rights or the agreements contained herein, Borrower shall pay all costs of collecting or attempting to collect this Second Amended Note or protecting or enforcing such rights, including, without limitation, reasonable attorneys' fees.

 

3

14.    **Legal Limits.** This Second Amended Note is subject to the limitation that in no event shall interest or any other amount paid or agreed to be paid to Lender for the use, forbearance or detention of money to be advanced hereunder or pursuant to this Second Amended Note exceed the highest lawful rate permissible under applicable usury laws. If fulfillment of any provision hereof shall be deemed by a court of competent and final jurisdiction to violate any applicable usury restrictions then _ipso facto_, the obligation to be fulfilled shall be reduced to the limit of such validity, and any amount received in excess of such limit shall be applied to reduce the unpaid principal balance hereof and not to the payment of interest.

15.    **Default.** If Borrower shall fail to make any regular installment payment of interest within ten (10) days of the date such payment is due and payable, a late charge by way of damages shall be immediately due and payable. The late charge shall not be applicable to the principal portion of the final payment due hereunder. Borrower recognizes that default by Borrower in making the payments herein agreed to be paid when due will result in Lender or other holder hereof incurring additional expense in servicing the loan, in loss to Lender or other holder hereof of the use of the money due and in frustration to the Lender or other holder hereof in meeting its loan commitments. Borrower agrees that, if for any reason Borrower fails to pay the amounts due under this Second Amended Note when due, Lender or other holder hereof shall be entitled to damages for the detriment caused thereby, but that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore agrees that a sum equal to ten cents ($.10) for each one dollar ($1.00) of each payment more than ten (10) days in arrears is a reasonable estimate of said damages to Lender or other holder hereof which sum Borrower agrees to pay on demand.

16.    **Acceleration.** If default be made in the payment of any part of any of the several installments of this Second Amended Note when due then, after the giving of ten (10) days prior written notice from Lender to Borrower, Lender may at any time thereafter during the continuance of any such default deem the entire unpaid principal balance of this Second Amended Note together with any interest accrued thereon immediately due and payable without further notice of such election and without demand or presentment, become immediately due and payable at the place of payment aforesaid and the principal balance together with any interest accrued thereon, so accelerated and declared due as aforesaid, shall thereafter bear simple interest at the Interest Rate until paid.

17.    **REFEREE.** ALL DISPUTES ARISING OUT OF OR PERTAINING TO THIS LOAN SHALL BE HEARD AND DETERMINED BY A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638 ET SEQ. IN EFFECT AS OF THE DATE HEREOF. THE VENUE OF ANY PROCEEDING HEREUNDER SHALL BE IN LOS ANGELES COUNTY, CALIFORNIA (UNLESS CHANGED BY STIPULATION OF THE PARTIES).

(A)    THE PARTY SEEKING TO RESOLVE THE DISPUTE SHALL SERVE A COMPLAINT ON THE OTHER PARTY IN THE MANNER PRESCRIBED BY LAW AND ON COUNSEL PURSUANT TO THE NOTICE PROVISIONS HEREUNDER. WITHIN TEN (10) DAYS AFTER THE SERVICE OF THE COMPLAINT OR STATEMENT OF THE COMPLAINT OR STATEMENT OF CLAIM, THE PARTY SEEKING RELIEF SHALL MAKE A WRITTEN REQUEST FOR THE SPECIFIC DESIGNATION OF A REFEREE TO TRY THE DISPUTE. THEREAFTER THE PARTIES SHALL USE THEIR BEST EFFORTS TO AGREE UPON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE UPON A REFEREE WITHIN TEN (10) DAYS AFTER A WRITTEN REQUEST TO DO SO BY ANY PARTY, THEN ANY PARTY MAY PETITION THE PRESIDING JUDGE OF THE LOS ANGELES COUNTY SUPERIOR COURT TO APPOINT A REFEREE. THE PRESIDING JUDGE SHALL HAVE THE POWER TO ASSIGN SAID REQUEST TO SUCH JUDGE OF THE SUPERIOR COURT AS THE PRESIDING JUDGE DEEMS APPROPRIATE. FOR THE GUIDANCE OF THE JUDGE MAKING THE APPOINTMENT OF SAID REFEREE, THE PARTIES AGREE THAT THE PERSON SO APPOINTED SHALL BE A RETIRED JUDGE.

(B)    THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE, SECTIONS 640, 641, 642, 643, 644, 645 AND 645.1, SHALL BE APPLICABLE TO DISPUTE

4

 

040

RESOLUTION BY A REFEREE HEREUNDER. IN AN EFFORT TO CLARIFY AND AMPLIFY THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 644 AND 645, THE PARTIES AGREE THAT THE REFEREE SHALL DECIDE THE DISPUTE SUBMITTED BY THE PARTIES FOR DECISION IN THE SAME MANNER AS REQUIRED FOR A TRIAL BY COURT AS SET FORTH IN CALIFORNIA CODE OF CIVIL PROCEDURE, SECTIONS 631.8 AND 632, AND CALIFORNIA RULES OF COURT, RULE 232. THE REFEREE SHALL TRY AND DECIDE THE DISPUTE ACCORDING TO AND BASED ON ALL OF THE SUBSTANTIVE AND PROCEDURAL STATUTORY AND DECISIONAL LAW OF THE STATE OF CALIFORNIA, UNLESS THE PARTIES STIPULATE TO THE CONTRARY. WHEN THE REFEREE HAS DECIDED THE DISPUTE, THE REFEREE SHALL ALSO CAUSE THE PREPARATION OF A JUDGMENT BASED ON SAID DECISION. THE JUDGMENT TO BE ENTERED BY THE SUPERIOR COURT, BASED UPON THE DECISION OF THE REFEREE, SHALL BE APPEALABLE IN THE SAME MANNER AS IF THE JUDGE SIGNING THE JUDGMENT HAD TRIED THE CASE.

(C)   THE PARTIES SHALL DILIGENTLY COOPERATE WITH ONE ANOTHER AND THE PERSONS(S) APPOINTED TO RESOLVE THE DISPUTE, AND SHALL PERFORM SUCH ACTS AS MAY BE NECESSARY TO OBTAIN A PROMPT AND EXPEDITIOUS RESOLUTION OF THE DISPUTE. IF EITHER PARTY REFUSES TO DILIGENTLY COOPERATE, AND THE OTHER PARTY, AFTER FIRST GIVING NOTICE OF ITS INTENT TO RELY ON THE PROVISIONS OF THIS SECTION 15.17, INCURS ADDITIONAL EXPENSES OR ATTORNEYS' FEES SOLELY AS A RESULT OF SUCH FAILURE TO DILIGENTLY COOPERATE, THE REFEREE MAY AWARD SUCH ADDITIONAL EXPENSES AND ATTORNEYS' FEES TO THE PARTY GIVING SUCH NOTICE, EVEN IF SUCH PARTY IS NOT THE PREVAILING PARTY IN THE DISPUTE.

THE COST OF THE PROCEEDING SHALL INITIALLY BE BORNE EQUALLY BY THE PARTIES TO THE DISPUTE, BUT THE PREVAILING PARTY IN SUCH PROCEEDINGS SHALL BE ENTITLED TO RECOVER, IN ADDITION TO REASONABLE ATTORNEYS' FEES AND ALL OTHER COSTS, ITS CONTRIBUTION FOR THE REASONABLE COST OF THE REFEREE AS AN ITEM OF RECOVERABLE COSTS. IF EITHER PARTY REFUSES TO PAY ITS SHARE OF THE COSTS OF THE PROCEEDING, AT THE TIME(S) REQUIRED, THE OTHER PARTY MAY DO SO, IN WHICH EVENT THAT PARTY WILL BE ENTITLED TO RECOVER (OR OFFSET) THE AMOUNT ADVANCED, WITH INTEREST, EVEN IF THAT PARTY IS NOT THE PREVAILING PARTY. THE REFEREE SHALL INCLUDE SUCH COSTS IN HIS JUDGMENT OR AWARD.

(D)   The following matters are excluded from Reference Proceedings hereunder: (i) Any matter which is within the jurisdiction of a probate, small claims, or bankruptcy court; and (ii) An action for bodily injury or wrongful death, or for latent or patent defects to which Code of Civil Procedure §337.1 or §337.15 applies. The filing of a court action to (w) enforce the provisions of this paragraph 17, regarding submission of disputes to a reference, (x) to enable the recording of a notice of pending action, (y) for order of attachment, receivership, injunction, or (z) other provisional remedies, shall not constitute a violation of these provisions of this Second Amended Note.



Initials

18.   **WAIVER OF JURY.** WITH RESPECT TO ANY DISPUTE ARISING UNDER OR IN CONNECTION WITH THIS SECOND AMENDED NOTE. AND TO THE EXTENT PERMISSIBLE AT LAW, EACH PARTY TO THIS SECOND AMENDED NOTE HEREBY IRREVOCABLY WAIVES ALL RIGHTS IT MAY HAVE TO DEMAND A JURY TRIAL. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE PARTIES AND EACH PARTY ACKNOWLEDGES THAT NONE OF THE OTHER MEMBER NOR ANY PERSON ACTING ON BEHALF OF THE OTHER PARTY HAS MADE ANY REPRESENTATION OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE PARTIES EACH FURTHER ACKNOWLEDGE THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE

 

5

OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS SECOND AMENDED NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THE PARTIES EACH FURTHER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION.

Initials

19.    **Choice of Law.** This Second Amended Note shall be governed by the laws of the State of California, except to the extent that Federal laws may preempt the laws of the State of California.

20.    **Modification.** This Second Amended Note may be altered, amended, or repealed only by a writing signed by all of the Members.

21.    **Entire Agreement.** This Second Amended Note contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior understandings with respect thereto. This Second Amended Note may not be modified, changed, supplemented or terminated, nor may any obligations or rights hereunder be waived, except by written instrument signed by the party to be charged or by its agent duly authorized in writing or as otherwise expressly permitted herein. Other than as expressly set forth in this Second Amended Note, the parties do not intend to confer any benefit hereunder on any person, firm or corporation other than the parties hereto.

22.    **Severability.** If any provision of this Second Amended Note is determined by any court of competent jurisdiction or arbitrator to be invalid, illegal, or unenforceable to any extent, that provision shall, if possible, be construed as though more narrowly drawn, if a narrower construction would avoid such invalidity, illegality, or unenforceability or, if that is not possible, such provision shall, to the extent of such invalidity, illegality, or unenforceability, be severed, and the remaining provisions of this Second Amended Note shall remain in effect.

23.    **Extinguishment of the Original Note.** Upon the funding of the additional Two Hundred Fifty Thousand Dollars ($250,000.00) USD, as provided for in this Second Amended Note, and the execution of this Second Amended Note, the Original Note shall be of no force or effect, it being the intent and desire of the Borrower and Lender that this Second Amended Note shall supersede and replace the Original Note, in all aspects.

**BORROWER:**

**1629 Griffith, LLC a California limited liability company**

Dated: **5/15/17**              By: _____
                                        Dana Hollister

**LENDER:**

**Dartplace Limited**

Dated: **5|17|17**              By: _____
                                        Michael Watson

(*Remainder of Page Intentionally Blank*)

6

042

**"EXHIBIT 6"**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**

--

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Dartplace Limited
Flat 19, 29 Essex Street
London, England WC2R
GBR

**DOCUMENT NUMBER: 67746950002**
**FILING NUMBER: 18-7632522309**
**FILING DATE: 02/07/2018 15:05**

**IMAGE GENERATED ELECTRONICALLY FOR WEB FILING**
**THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY**

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| **1a. ORGANIZATION'S NAME** 1629 Griffith, LLC | | | | | |
| **1b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| **1c. MAILING ADDRESS** 1923 Micheltorena Street | **CITY** Los Angeles | **STATE** CA | **POSTAL CODE** 90039 | | **COUNTRY** USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | | |
|---|---|---|---|---|---|
| **2a. ORGANIZATION'S NAME** | | | | | |
| **2b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | | **COUNTRY** |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | | |
|---|---|---|---|---|---|
| **3a. ORGANIZATION'S NAME** Dartplace Limited | | | | | |
| **3b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| **3c. MAILING ADDRESS** Flat 19, 29 Essex Street | **CITY** London | **STATE** England | **POSTAL CODE** WC2R | | **COUNTRY** GBR |

**4. COLLATERAL:** This financing statement covers the following collateral:
All of debtors interest in the lease 1629 Griffith Park Bl. & 1604 Edgecliffe Drive, Los Angeles, CA and all permits, licenses, applications and other rights pertain to the use such property.

**5.** Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| **6a.** Check only if applicable and check only one box: | **6b.** Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**

**FILING OFFICE COPY**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**206 N. Jackson Street, Suite 201, Glendale, CA 91206**

A true and correct copy of the foregoing document entitled (*specify*):  **MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY (FRBP RULE 9019); POINTS AND AUTHORITIES AND DECLARATION OF DANA HOLLISTER**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **6/21/19**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On **_____**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/21/19 | Diana Chau | /s/ Diana Chau |
|---------|------------|----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ECF Service List:**

- **William C Beall**    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **David I Brownstein**    david@brownsteinfirm.com
- **Leonardo Drubach**    leo@9000LAW.COM
- **Merak E Eskigian**    meskigian@gmlawplc.net,
  mgoshgarian@gmlawplc.net,mnewman@gmlawplc.net,zanderson@gmlawplc.net
- **Dane W Exnowski**    dane.exnowski@mcalla.com, bk.ca@mcalla.com
- **Michael G Fletcher**    mfletcher@frandzel.com, sking@frandzel.com
- **Sandford L. Frey**    sfrey@leechtishman.com, lmoya@leechtishman.com;dmulvaney@leechtishman.com
- **Amir Gamliel**    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com
- **Scott F Gautier**    sgautier@robinskaplan.com
- **Robert P Goe**    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- **Mark S Horoupian**    mhoroupian@sulmeyerlaw.com,
  ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;ppenn@ecf.inforuptcy.com
- **Merdaud Jafarnia**    bknotice@mccarthyholthus.com, mjafarnia@ecf.inforuptcy.com
- **Dare Law**    dare.law@usdoj.gov, ron.maroko@usdoj.gov;Alvin.mar@usdoj.gov
- **Harris M Madnick**    hmmadnick@kramarmadnick.com
- **Robert Mockler**    rmockler@mckoolsmithhennigan.com, robert-mockler-
  0364@ecf.pacerpro.com,awallace@mckoolsmithhennigan.com,lmorrin@mckoolsmithhennigan.com,khom@mcko
  olsmithhennigan.com,sbyrd@mckoolsmithhennigan.com
- **Randall P Mroczynski**    randym@cookseylaw.com
- **David L. Neale**    dln@lnbyb.com
- **Matthew D Pham**    mpham@afrct.com, msinclair@afrct.com;afrctecf@afrct.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- **Kelly M Raftery**    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **Dean G Rallis**    drallis@afrct.com,
  msinclair@afrct.com;AFRCTECF@afrct.com;mpham@afrct.com;drallis@ecf.courtdrive.com
- **Ashish R Rawat**    ashish.rawat@americaninfosource.com
- **Lindsey L Smith**    lls@lnbyb.com, lls@ecf.inforuptcy.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;laik@gtlaw.com
- **David A Tilem**    davidtilem@tilemlaw.com,
  DavidTilem@ecf.inforuptcy.com;malissamurguia@tilemlaw.com;joanfidelson@tilemlaw.com;JoanFidelson@ecf.in
  foruptcy.com;MalissaMurguia@ecf.inforuptcy.com;DianaChau@tilemlaw.com
- **Alan G Tippie**    atippie@sulmeyerlaw.com,
  atippie@ecf.courtdrive.com;dperez@ecf.courtdrive.com;dperez@sulmeyerlaw.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Reed S Waddell**    rwaddell@frandzel.com, sking@frandzel.com
- **Gerrick Warrington**    gwarrington@frandzel.com, sking@frandzel.com
- **Steven Werth**    swerth@sulmeyerlaw.com,
  asokolowski@sulmeyerlaw.com;mviramontes@sulmeyerlaw.com;asokolowski@ecf.inforuptcy.com;swerth@ecf.in
  foruptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE
048